195 So.2d 617 (1967)
Betty Ann RUSSELL, a Minor, by and through Her Father and Next Friend, Fred R. Russell, Appellant,
v.
Charles A. ECKERT and E.R. Heard, Appellees.
Hartford Accident and Indemnity Company, a Corporation, Garnishee-Appellee.
No. 6915.
District Court of Appeal of Florida. Second District.
February 15, 1967.
Rehearing Denied March 16, 1967.
*618 Paul Kickliter and J.A. McClain, Jr., of McClain, Turbiville & Davis, Tampa, for appellant.
T. Paine Kelly, Jr., and Charles W. Pittman, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for garnishee-appellee.
No appearance for other appellees.
*619 PIERCE, Judge.
This is an appeal by Betty Ann Russell, a minor, plaintiff below, from a final judgment entered by the Hillsborough County Circuit Court after trial without jury of an issue made up between plaintiff and Hartford Accident and Indemnity Company, a corporation, garnishee below, wherein the Court held in favor of the garnishee.
On November 5, 1964, in an action for damages for personal injuries incurred in an automobile accident, plaintiff, by her father and next friend, recovered a judgment against defendants Charles A. Eckert and E.R. Heard in the amount of $16,546.10, Eckert being the driver and Heard the owner of the automobile found at fault. On December 30, 1964, plaintiff procured issuance of writ of garnishment against Hartford, requiring Hartford to disclose any indebtedness to defendant Heard. Hartford filed its answer denying any indebtedness to Heard, whereupon, on January 18, 1965, plaintiff traversed said answer and alleged that Hartford was indebted to Heard in the amount of $10,000.00 upon an automobile liability insurance policy issued by Hartford in favor of Heard and that the policy was in force on the day of the automobile accident, October 12, 1963. After trial before the Court without jury, the Court on November 18, 1965, entered final judgment in favor of Hartford and against plaintiff. It is from this judgment that plaintiff appeals to this Court.
The crux of the case is whether, at the time of the accident on October 12, 1963, Hartford was bound on a policy of liability insurance to Heard. If such insurance was in force, judgment in garnishment should have been for the plaintiff. If the insurance was not in force, then judgment was rightfully for Hartford. We hold that a policy of insurance was in force and that therefore the trial Court should have entered judgment for plaintiff.
The facts are without material conflict. Determination here rests upon our legal conclusion upon those facts. Glass-Cooper, Inc., managed largely through its secretary-treasurer, Stavros Demopaulos, was a "general lines agent" in Orlando for Hartford, with offices just next door to defendant Heard, who by coincidence was in the life insurance business. On October 9, 1963, Heard contacted Demopaulos, asking for a 24 hour binder liability policy until Heard could come by Demopaulos' office the following day to get further insurance. Demopaulos complied with the request and bound Heard for 24 hours, and arranged a meeting the following day to give Heard extended coverage, which Heard had told him he wanted.
The following day, October 10, 1963, the day before his son was to drive the automobile to Tampa, Heard came by Demopaulos' office to consummate the coverage. Demopaulos filled out Heard's application, inserted October 10, 1963 as the effective date of the policy, and accepted Heard's premium of $27.80 at that time. It was near closing time in Demopaulos' office, he was interrupted by a telephone call, and, being anxious to leave the office anyway, he simply indicated to one of his secretaries to take Heard's application and money and to give Heard a receipt for the premium, not even bothering in his haste to get Heard's signature on the application. In the application, which Demopaulos filled out by questions and answers from Heard, all automobile accidents and traffic violations he or his family had had during the previous three years were listed by Heard, who also stated that one insurance company had cancelled his insurance because of a disclosed accident. On that same Thursday, October 10, 1963, the application was sent to the Hartford office in Orlando; the accident occurred on October 12, 1963; Hartford was notified of the accident on October 12, 1963; and on Tuesday, October 15, 1963, Hartford refused to issue the policy.
*620 There can be no question as to Glass-Cooper, Inc, being the agent of Hartford; and of course, Demopaulos was Glass-Cooper. Hartford furnished letterheads, brochures, binder forms, stationery, application forms, etc., all bearing Hartford's name. A written standard agency contract was in force whereby Glass-Cooper could accept premiums for Hartford and receipt for same, sell Hartford's policies, and even orally bind Hartford on all Hartford policies, except what was known as the "economy" type of policy.
If there were any question of Demopaulos' actual authority to issue binding interim insurance coverage, he was at least clothed with the apparent authority to do so, and the law is clear that it is enough if apparent authority exists. In Hughes v. Pierce, Fla.App. 1961, 141 So.2d 280, the Florida Supreme Court had before it a case identically in point. In Hughes, one Mason was the "general lines agent" for Auto-Owners Insurance Company, the insurer, and at issue was the binding validity of an automobile casualty insurance policy indemnifying the automobile owner against claims of third persons for damages resulting from negligent operation of the owner's automobile  the same issue as here. The insurer, Auto-Owners Insurance Company, refused to defend the damage suit brought against the owner Hughes  also the same as here. "Substantial judgments" were procured against Hughes, who then brought suit against the insurer, contending he was protected by a liability policy. We quote from the opinion in Hughes (text 141 So.2d 282):
"Auto-Owners Insurance Company takes the position that Mason had no actual or apparent authority to bind the company by an oral contract of insurance such as is relied on by appellant. We agree that Mason had no actual authority from Auto-Owners Insurance Company to bind them to an oral contract of insurance. We must determine whether or not there * * * [was] apparent authority of Mason to bind Auto-Owners Insurance Company.
"Before making a determination of this issue it must first be recognized that considering the manner in which Mason conducted his insurance business it must be conceded that his legal status falls within the category of a `general lines agent' as defined by the pertinent statute of this state. (F.S. § 626.041, F.S.A.) As such he is licensed to represent insurance companies in the solicitation and sale of casualty insurance policies; to take applications for such policies and accept for transmittal to the company he represents money for insurance premiums and to issue receipts therefor; to negotiate, effect and procure, receive, deliver or forward, directly or indirectly, an insurance contract or renewal thereof or any endorsement relating to any insurance contract; to directly or indirectly cause to be made contracts of insurance for or on account of insurers whom he represents and to discharge other duties and functions normally performed by an insurance agent as outlined in the statute. * * *
"In Appleman on Insurance Law and Practice, Vol. 16, Sec. 8676 says: `An insurance agent cannot, of course, contract for insurance so as to bind his company without real or apparent authority therefor. The insurer is considered to be bound by the act of its agent only when the agent's act is within the scope of his apparent authority and the insured is not aware of any limitation thereon. The powers of such agents are governed by the general laws of agency, and an insurance agent possesses such powers only as have been conferred by his principal, or such as third persons have a right to assume that he possesses under the circumstances of the case. And while restrictions of which the insured has no notice are not binding on him, he cannot hold the insurer bound by the acts, contracts or representations of an agent, whether general *621 or special, which are beyond the agent's authority, as known either actually or circumstantially to him.

* * * * * *
"Since in this case Mason occupied the legal status under our statute as a general lines agent, it is irrebuttable that he was clothed with the apparent authority to perform every act on behalf of his principal which the statute gave him the right to do. By reference to the statute we see that a general lines agent is authorized to enter into contracts of insurance on behalf of the insurance companies he represents. Being so clothed with apparent authority, a third person may rely on his apparent authority to bind his principal by an oral contract of insurance and unless Mason's authority is limited by the company, which limitation is known to the third person, such third person will not be bound by the limitations unless the circumstances are such as would put a reasonable man on inquiry as to such limitations of authority." (Emphasis supplied).
In Centennial Insurance Company v. Parnell, Fla. 1955, 83 So.2d 688, the Supreme Court held that the insurance agent, Conklin, lacked either actual or apparent authority to represent the insurer, Centennial, and therefore the putative insured, Parnell, was not in fact covered by valid insurance. But the opinion in Hughes clearly distinguishes the Centennial case in the following language (text 141 So.2d 284):
"In Centennial Ins. Co. v. Parnell, Fla. 1955, 83 So.2d 688, the Supreme Court considered the question of the apparent authority of an insurance agent to bind his principal. That case involved a contract of marine insurance. The Supreme Court found from the evidence that the putative agent who handled the transaction for the insured Parnell was in fact not the agent of the insurance company being sued. Upon such finding it reversed the judgment rendered by the trial court in favor of Parnell and against the insurance company. The court found from the evidence that the putative agent had no actual authority to bind the insurance company to the risk, he had none of the indicia of apparent authority to do so  no application forms, literature, letterheads, calling cards, or anything else. By inference it may be reasonably concluded from this opinion that if the putative agent did in fact represent the insurance company and possessed the indicia of authority to bind it by having in its possession literature, letterheads or calling cards furnished to him by the company, then he would have been clothed with apparent authority to bind the company and the insured Parnell would have been protected." (Emphasis supplied.)
As hereinbefore pointed out, Glass-Cooper was using Hartford's letterheads, binder forms, stationery, application forms, etc., all furnished by Hartford, which would bring the agency relationship here within the purview of Hughes rather than Centennial. Also, in the instant case, when Heard paid his $27.80 to Demopaulos for what he understood was insurance coverage, Glass-Cooper gave him a credit form receipt therefor which, in its pertinent parts, stated:
"Orlando, Florida, October 10, 1963 RECEIVED OF Edward R. Heard Twenty Seven and 80/100 ... DOLLARS FOR Auto Ins.
GLASS-COOPER, INC."
The date, insured's name, the amount, and the words "Auto Ins." were all written in in handwriting. The rest of the receipt was a regular printed form.
Acts of an insurance agent within the scope of his real or apparent authority are binding upon his principal, and the general public may rely thereon and do not need to inquire as to the special powers of the agent, unless circumstances are affirmatively such as to put them upon inquiry. To put it another way, an agent *622 can contract for insurance so as to bind his company if he has the real or apparent authority, and the insurer is bound by the acts of its agent if within the scope of his apparent authority and the insured is not aware of any limitation thereon. American Fire Ins. Co. v. King Lumber & Mfg. Co., 1918, 74 Fla. 130, 77 So. 168, aff. 250 U.S. 2, 39 S.Ct. 431, 63 L.Ed. 810; Queens Ins. Co. v. Patterson Drug Co., 1917, 73 Fla. 665, 74 So. 807, L.R.A. 1917D, 1091.
The powers of insurance agents are governed by the general laws of agency, and an agent possesses powers conferred on him by his principal, or such as third persons are entitled to assume he possesses under the circumstances. Bradley v. Western & Southern Life Ins. Co., Fla.App. 1963, 148 So.2d 559, a 1st District Court case. The 3rd District Court, in Durbin Paper Stock Co. v. Watson-David Ins. Co., Fla.App., 167 So.2d 34, held that even an oral agreement by a general lines agent to obtain insurance on a certain building and contents therein at the request of the owner was such as to effectively bind the insurance companies represented by the agent if the surrounding circumstances and the previous dealings of the parties justified a finding that the necessary requirements of the insurance contract had been agreed upon between the parties and that a binding insurance policy existed between them, notwithstanding the companies had not been notified of the agent's binder until after the property had been destroyed by fire more than a year later, during which time no policies had been issued.
And somewhat paraphrasing the Hughes opinion, the 5th Circuit Court of Appeals, in Pacific Mut. Life Ins. Co. of California v. Barton, CCA 1931, 50 F.2d 362, cert. den. 284 U.S. 647, 52 S.Ct. 29, 76 L.Ed. 550, an appeal from the Federal District Court in Florida, held that the apparent authority of an insurance agent is equal to real authority when his limitations are unknown, and that forms furnished by the company to an insurance agent are evidence of his authority and representations to the public concerning it.
Another principle of law influencing the instant case is the doctrine of estoppel. Where an insurance company makes its local agent its medium through which it receives all benefits from the insured, the company is estopped to deny the agent's authority when benefits to the insured are involved. Southern States Fire Ins. Co. v. Vann, 1913, 69 Fla. 549, 68 So. 647, L.R.A. 1916B, 1189. Facts within the knowledge of an insurance agent are deemed facts within the knowledge of the insurance company. Poole v. Travelers Ins. Co., 1938, 130 Fla. 806, 179 So. 138. A general agent of an insurance company, or an agent who, although called local agent because restricted to a particular locality, has general powers, may bind the company by waiver or estoppel so as to preclude the company from relying on irregularities or even on provisions contained in the contract of insurance with respect to conditions on which it shall have inception. 44 C.J.S. § 275(4) Insurance, page 1097. This applies when the agent receives the premium. McClelland v. Mutual Life Ins. Co., 217 N.Y. 336, 111 N.E. 1062; Blatz v. Travelers Ins. Co., 272 App.Div. 9, 68 N.Y.S.2d 801.
Demopaulos accepted Heard's premium money, gave him a receipt specifying the money was for "auto insurance," and dated the application as the effective date of the coverage; all on the same date, October 10, 1963. Demopaulos did not tell Heard that he did not have then and there effective coverage, but on the contrary by his every act, doing, and statement, led Heard unerringly to believe and assume that he had interim effective liability insurance. Glass-Cooper is therefore estopped to deny the legal effect of Demopaulos' actions, and Hartford is likewise estopped under the general law of agency and also because of the statutory powers of a general lines agent under F.S. Section 626.041 F.S.A. The rationale behind this *623 principle is stated in 4 Couch on Insurance, 2nd Sec. 198 in the following language: "[o]therwise, in case of loss subsequent to the application and prior to its acceptance or rejection the insured would not be covered, whereas if loss had not occurred during such a period, he would, in case of acceptance of the risk, have had to pay a premium covering it."
Other lesser objections are advanced by Hartford to escape liability here, which will be adverted to briefly. Hartford claims that, although Heard disclosed to Demopaulos all previous accidents and traffic violations he or his family had encountered during the period of time provided in the application, he did not disclose the fact that other companies had either cancelled his insurance or had refused to insure him. Hartford emphasizes that Heard failed to disclose that Safeco Insurance Company had previously cancelled him out and another company had refused coverage. But these were not for any traffic accident. Heard did, however, disclose the fact that one company, West American Insurance Company, had cancelled out his previous insurance because of an accident. So it could be plausibly argued that any objection by Hartford would be unavailing because of any previous undisclosed cancellations or rejection by other companies where it was for the same reason as West American's cancellation. But the objection is effectually eliminated by the frank testimony of the casualty underwriting superintendent for Hartford to the effect that it "wouldn't have made any difference" in the issuance or rejection of the policy so long as Heard disclosed the reasons why his previous policies had been cancelled or rejected, which he had done in explaining the cancellation by West American.
The application contained the statement "I understand that no insurance is afforded unless and until this application is accepted by the Company," but this clearly referred to a permanent policy for which the application was prepared and sent to Hartford, and did not apply to an interim insurance policy, as to which Glass-Cooper had full authority to bind Hartford for a period of ten days, even with the "economy" policy. This authority to bind interim insurance was for the obvious purpose of providing coverage while applications for permanent insurance were pending.
Hartford makes reference to the fact that the application filled out in Glass-Cooper's office was not signed by Heard. But this is of no material consequence. In the first place, the oversight was occasioned by the hasty desire of Demopaulos to leave his office. In the second place and more importantly, in the filling out and handling of the application Demopaulos was strictly the agent of the insurer and not Heard. 44 C.J.S. § 139 Insurance, p. 798. And if the application was not in fact signed, such physical act must be deemed to have been waived. Certainly the information contained therein was furnished by Heard, and to such extent the application for insurance was "made" by him.
The cause is reversed and remanded with directions to enter a judgment in garnishment in favor of plaintiff below and against the garnishee.
Reversed and remanded.
LILES, Acting C.J., and ODOM, ARCHIE M., Associate Judge, concur.