BOOTH, Judge.
This cause is before us on appeal of a trial court order granting appellee’s motion for summary judgment and awarding appellants in excess of $200,000 under an insurance contract, and dismissing various other counts in appellant’s complaint. For the following reasons, we affirm in part and reverse in part.
The record reflects that appellants brought suit to collect $500,000 they claimed was due under a policy insuring the life of Robert A. Bean. Bean was one of three officers of appellant Florida Industrial Machinery, Inc. All three had mutually concluded that they needed to insure each other’s lives so that funds would be available to buy out each other’s share of the business in the event of one of their deaths. Consequently, they invited life insurance agent James Plantholt to a June 1985 board meeting and authorized him to *414 obtain $500,000 worth of coverage for each of them.
Appellants alleged in their complaint that Plantholt was unlicensed at the time of the June meeting and did not forward an insurance application until approximately two months later. They further alleged that Bean submitted his application soon thereafter but that no policy had been issued when he was killed during an automobile race on November 10, 1985. The allegations in appellants’ complaint, summarized broadly, were that unjustifiable delays in the application approval process were caused by various individuals responsible for forwarding the completed application to Executive Life, and that due to these delays, the policy was not issued before Bean’s death. Appellants also alleged that in early September 1985, they contacted Plantholt to inquire about obtaining an interim contract for $500,000 during the application’s pendency. They wanted the coverage because of planned overseas travel. According to appellants, Plantholt communicated with Executive Life's regional office in Mississippi, headed by regional general agent Ronald Parsons. Appellants maintained that the regional office authorized a $500,000 interim contract of insurance and that Plantholt collected their premiums at that time and assured them that they were insured. Thus, appellants alleged paying the premiums in early September 1985 for all three officers’ interim and permanent coverage.
Appellee argues that the August application was expressly limited by its terms to authorize no more than $200,000 worth of interim coverage during the application’s pendency.[1] Appellee’s argument was based on the terms of a “conditional receipt” attached to the application, even though that receipt was never signed and was contingent on signature and tender of the premium at the time the application was initially completed. The record reflects that the premium was not paid when the application was completed, and that the completed application and uncompleted conditional receipt were forwarded to Plan-tholt’s superiors in August. By the time of the September conversation and alleged assurances that upon premium payment, $500,000 worth of interim coverage would be secured, the application and its receipt were no longer in Plantholt’s possession. Neither party alleges that the conditional receipt was ever executed, but Executive Life maintained that language contained in the completed policy application precluded Plantholt from waiving the conditional receipt’s $200,000 liability limit.
Appellants’ complaint was based on several different causes of action, some alleging tort theories of recovery and others alleging a contract theory. The trial court dealt with the various counts in piecemeal fashion, entering several orders dismissing various counts or portions of counts, and granting appellee’s motion for summary judgment on its theory that the maximum it owed under any contract was $200,000. In granting summary judgment on the contract theory, the court necessarily ruled that there were no disputed material facts which could support a contract recovery in excess of $200,000. This was error.
Oral contracts of insurance are valid in Florida provided that all the elements of a written contract are proven to exist. Burns v. Consolidated American Insurance Company, 359 So.2d 1203 (Fla. 3d DCA 1978). Appellants correctly contend that the unexecuted conditional receipt did not, as a matter of law, limit contractual liability to $200,000. The receipt was conditional on signature, and it was not signed. The completed application also did not, as a matter of law, preclude liability exceeding $200,000. Although the application limited Plantholt’s authority to waive express limitations on coverage, those limits did not necessarily apply to any interim contract that might have been formed. Statements in an application for a written contract of insurance purporting to expressly exclude interim coverage during the application’s pendency are inapplicable to interim contracts authorized by general *415 agents having authority to issue binders.[2] Russell v. Eckert, 195 So.2d 617 (Fla. 2d DCA 1967). Although the signed application did limit Plantholt’s authority, it did not limit Executive Life’s regional office’s authority to authorize a binder exceeding $200,000. The powers of insurance agents are “governed by the general laws of agency, and an agent possesses powers conferred on him by his principal, or such as third persons are entitled to assume he possesses under the circumstances.” Russell, supra at 622, citing Bradley v. Western and Southern Life Insurance Company, 148 So.2d 559 (Fla. 1st DCA 1963). The record below does not demonstrate, as a matter of law, that appellant Florida Industrial Machinery had reason to believe that the regional office did not have authority to agree to a $500,000 binder.
Appellee further argues that numerous depositions revealing the facts of this case were not filed with the trial court until after it awarded appellants $200,000 under their contract cause of action. Ap-pellee contends that the evidence contained in the depositions is consequently not a proper subject for review of the trial court’s summary judgment order. The record reflects, however, that at the summary judgment hearing in November 1988, both parties extensively quoted facts contained in the depositions in their memorandums of law. They also argued them orally to the trial court, and no objection was made at that time concerning failure to file.
In Ferguson v. VSL Corporation, 528 So.2d 32 (Fla. 3d DCA 1988), review denied, 537 So.2d 568 (Fla.1988), the Third District reviewed a situation where a circuit court adjourned a pretrial conference and continued it on the morning of the scheduled trial six days later. On the morning of trial, the judge asked counsel to advise him on the state of the evidence. After hearing both counsels’ presentations, the judge entered summary judgment in VSL’s favor. Although Ferguson argued on appeal that summary judgment was improper because the judge relied on depositions argued by the attorneys but not filed by the court as required by Florida Rule of Civil Procedure 1.510(c), the Third District held that because the depositions were taken pursuant to notice and were “physically in existence before the court,” the rule requirements were satisfied. The case distinguished Liberman v. Rhyne, 248 So.2d 242 (Fla. 3d DCA 1971), which held as a general rule that depositions taken and filed subsequent to a summary judgment hearing may not be considered in ruling on the motion.
It is unnecessary to decide whether, under Ferguson, the rule requirements were sufficiently met to consider the depositions admitted into evidence at the time the trial court ruled. If the depositions were admitted, they obviously showed a fact dispute on whether the regional office authorized the $500,000 binder and whether Plantholt told appellants that coverage might still be limited to $200,000.[3] But even if the depositions were not properly before the court, appellee’s motion for summary judgment did not negate the allegation that the regional general agent’s office authorized the $500,000 binder. Appellee was the movant for summary judgment and had the burden of showing that, even construing all the evidence most favorably to the nonmoving party, there was no genuine issue of material fact. Hutchinson v. Miller, 548 So.2d 883 (Fla. 5th DCA 1989). Appellee’s motion, which did not even attach any supporting affidavits, clearly failed to meet that test.[4]
*416 The trial court also dismissed several counts containing appellants’ tort recovery theories, on the ground that they were precluded by the contract recovery as a matter of law. Due to the reversal of the contract determination, those tort counts must also be reinstated with the following two exceptions. First, the trial court properly dismissed appellants’ complaints for punitive damages. No view of the complaint allegations and record evidence could support a punitive damages award under the principles outlined in White Construction Company, Inc. v. DuPont, 455 So.2d 1026 (Fla.1984). Second, the trial court correctly dismissed appellants’ count two tort theory of recovery. Although an implied duty of fair dealing and good faith in handling a claim was recognized in Opper-man v. Nationwide Mutual Fire Insurance Company, 515 So.2d 263 (Fla. 5th DCA 1987), review denied, 523 So.2d 578 (Fla.1988), that decision explains that if the basis of the alleged breach is a failure or refusal to settle in good faith, the cause of action is statutory.[5] Appellants cited no statute under the complaint.[6] To the extent that count two contained any alternative bases to support a finding of breach of duty, those bases were nothing but restatements of causes of action alleged under the other tort counts. Under the circumstances, we find no error in the trial court’s ruling on this count.
Accordingly, the trial court’s orders are affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
JOANOS and ALLEN, JJ., concur.

. Appellee tendered a $200,000 check soon after Bean’s death, which was refused.

. Interim insurance contracts are commonly referred to as “binders” and are deemed by statute to include all the usual terms of the policy for which the binder was given, together with any additional terms agreed to but minus any of the usual terms of the policy which were specifically excluded by the terms of the binder. § 627.420, Fla.Stat. (1989).

. Moreover, regional agent Parsons’ contract with Executive Life was attached to one of the depositions. It clearly showed that he had authority to waive or modify the terms, conditions, and limitations of any policy.

.We reject appellee's additional contention that, because the policy in question was meant to replace existing insurance which remained in effect at the time of Bean’s death, appellants were not entitled to recovery because they suffered no damages. Appellants argue that even if the insurance was originally meant to replace *416 other policies, changed circumstances during the delay period caused them to decide to keep the old policies and add the Executive Life coverage to existing insurance. Appellee responds that even if appellants changed their minds, it had no reason to know it. However, appellants’ September inquiries about obtaining a binder in time for the overseas trip at least arguably placed Executive Life on notice that the insurance sought was no longer intended to merely replace existing coverage.

. See § 624.155, Fla.Stat.

. As explained in Opperman v. Nationwide Mutual Fire Insurance Company, 515 So.2d 263, 265 (Fla. 5th DCA 1987), review denied, 523 So.2d 578 (Fla.1988), no common law, first party cause of action exists in Florida for bad-faith refusal to settle.