574 So.2d 1182 (1991)
Eduardo GONZALEZ and Griselda Acosta, Appellants,
v.
GREAT OAKS CASUALTY INSURANCE COMPANY, Appellee.
No. 88-2224.
District Court of Appeal of Florida, Third District.
February 12, 1991.
*1183 Magill & Lewis and R. Fred Lewis, Miami, for appellants.
Ponzoli & Wassenberg and Steven B. Sundook, Miami, for appellee.
Before HUBBART, COPE and GODERICH, JJ.
PER CURIAM.
Eduardo Gonzalez and his stepdaughter Griselda Acosta appeal a summary final judgment in favor of Gonzalez' automobile liability insurer, Great Oaks Casualty Insurance Co. We reverse.
As this is a summary judgment, we construe the record in the light most favorable to the appellants as the nonmoving parties. See e.g., Williams v. Florida Realty & Management Co., 272 So.2d 176, 177 (Fla. 3d DCA 1973). Taken in that light, the record indicates that Gonzalez had from time to time procured automobile insurance policies through the Real Insurance Agency. Real held a Florida license as authorized agent for several insurance companies, but did not hold such a license for Great Oaks at the time pertinent here.
In February, 1985 Gonzalez contacted Real to obtain automobile insurance for a newly acquired vehicle. Gonzalez requested full coverage for the new vehicle and provided information by telephone. Real ascertained that it would be in the best interest of Gonzalez to procure insurance from Great Oaks through Florida's Exchange of Business statute, section 626.752, Florida Statutes (1985). Real had authority to bind coverage for Great Oaks for policies issued under that statute.
Gonzalez testified that payment was made at about that time and was taken to the insurance agency by his wife. He testified that he was not requested to sign an application although his wife signed a premium finance agreement. He was informed by Real that coverage had been bound. The business records produced by Real Insurance Agency contained an entry indicating a binder as of February 8, 1985.
Mr. Gonzalez testified that in March, 1985 he called Real again because he had not received the payment book for the insurance policy. He was assured that the payment book would be forthcoming and that the insurance was in force.
In April, 1985 the stepdaughter, Acosta, sustained injuries while a passenger in a vehicle owned by a third person. Gonzalez contacted Real to make a claim for his stepdaughter and to request insurance cards, which he had not yet received. The claim was forwarded to Great Oaks.
In July, 1985 Great Oaks denied coverage and declared the policy void from its inception. Great Oaks stated that the application submitted by Real Insurance Agency listed only Gonzalez and his wife as drivers of the insured vehicle. Great Oaks indicated it had learned that Acosta was also a licensed driver who operated the vehicle twenty-five percent of the time. Great Oaks deemed that to be a material misrepresentation of fact and on that basis denied coverage.
Litigation ensued in which Gonzalez and Acosta sought coverage for Acosta's injuries, while Great Oaks sought rescission of the insurance policy. Discovery revealed *1184 that an application had been forwarded by Real to Great Oaks dated April 11, 1985, several days before the accident. At the bottom of the application, in a space provided for that purpose, Real indicated that coverage was bound effective 4:30 p.m., April 11, 1985. Business records of the insurance agency contain a corresponding entry indicating coverage was bound on that date. The records of the insurance agency, in other words, indicate that coverage was bound both on February 8 and on April 11. The only insurance application produced in the litigation was that dated April 11, 1985.
Although the April 11 application bears a signature of Mr. Gonzalez, Mr. Gonzalez testified that he had not been shown the application and had not signed it. The application was completed by Real and Real signed it, rather than having Mr. Gonzalez sign in person. The application contains a rejection of uninsured motorist coverage. Gonzalez contends that he specifically requested full coverage, and that he did not reject the uninsured motorist coverage.
Gonzalez originally brought suit against Great Oaks, Real, and the premium finance company. After procedural steps not relevant here, Great Oaks moved for summary judgment, which the trial court granted. Gonzalez and Acosta have appealed. Only the claims pertaining to Great Oaks are involved in this appeal.
In support of its motion, Great Oaks made several distinct arguments. First, Great Oaks argued that Real was exclusively the agent of Gonzalez, and was not the agent of Great Oaks. As a result, Great Oaks contended, it could have no liability for any acts or omissions of Real. We disagree.
At the time of the events below, Real was not a state licensed agent for Great Oaks. Real was a licensed agent for several other insurance companies. The Gonzalez insurance policy was procured under Florida's Exchange of Business statute, section 626.752, Florida Statutes (1985). That statute authorizes an agent to "place a class of business which his insurer is authorized to write with an insurer for which he is not a licensed agent when it is in the best interest of the insured to do so and whether or not it is rejected business." Id.
For purposes of the statute, Great Oaks had expressly authorized Real to bind coverage. Great Oaks had provided Real with the necessary manual, instructions, and forms to accomplish that. Pursuant to the authority granted by Great Oaks, Real bound coverage for Gonzalez on behalf of Great Oaks on two occasions.
Plainly, Great Oaks had conferred actual authority on Real to act on its behalf in binding insurance coverage. In so doing, Real acted as agent for Great Oaks. See, e.g., Gaskins v. General Ins. Co., 397 So.2d 729, 732 (Fla. 1st DCA 1981); Russell v. Eckert, 195 So.2d 617, 620-22 (Fla. 2d DCA 1967); Hughes v. Pierce, 141 So.2d 280, 282-84 (Fla. 1st DCA 1961).
Great Oaks next contends that it should be allowed to treat the insurance application as a forgery, since it was signed by Real instead of Gonzalez. As to the April application, Great Oaks will not be allowed to disavow the acts of its own agent who bound the coverage, so as to vitiate the coverage that was bound. See Russell v. Eckert, 195 So.2d at 622 (actions of company's agent "may bind the company by waiver or estoppel so as to preclude the company from relying on irregularities... ."); see also Abrams v. General Ins. Co., 508 So.2d 436 (Fla. 3d DCA 1987). While Great Oaks' internal manual called for the insured to sign the application, Real by its actions waived that requirement. See Russell, 195 So.2d at 622; see also State Farm Fire & Casualty Co. v. Hicks, 184 So.2d 685, 686 (Fla. 2d DCA) (recognizing that a contract of insurance may be established orally), cert. denied, 189 So.2d 634 (Fla. 1966). Even if that were not so, Great Oaks' motion for summary judgment has not accounted for the February, 1985 insurance binder and contract apparently orally entered into at that time. See State Farm Fire & Casualty Co. v. Hicks, 184 So.2d at 686.
*1185 Great Oaks next argues that the nondisclosure of Acosta as an automobile driver allowed Great Oaks to void the policy under section 627.409, Florida Statutes (1985). For summary judgment purposes there are two flaws with that argument, either of which requires denial of the motion. First, "[f]acts within knowledge of an authorized representative of the insurer while acting within the proper scope of his authority is knowledge of the insurance company." Gaskins v. General Ins. Co., 397 So.2d at 732 (citations omitted). Gonzalez contends that Real had actual knowledge that Acosta was a licensed driver residing in the household and that the insurance agency had in the past provided insurance cards for Acosta as well as Mr. and Mrs. Gonzalez. Testimony from the agency supports that contention. Since for these purposes notice to Real would be notice to Great Oaks, id., there is a disputed issue of material fact which precludes summary judgment. Second, Gonzalez introduced expert testimony that the listing of the stepdaughter on the application would not have adversely impacted the risk being insured and would not have created a higher premium. While Great Oaks takes the opposite position, the conflict cannot be resolved on summary judgment.
The summary judgment is reversed and the cause remanded for further proceedings consistent herewith.