JACKSON NATIONAL LIFE
INSURANCE COMPANY,
Plaintiff,

v.

Deborah PROPER, Defendant.

Nos. 89–1299–Civ–T–17B,
89–1478–Civ–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

March 13, 1991.

Edward R. Nicklaus, William R. Wicks, III, Dixon, Dixon, Nicklaus & Valle, Miami, Fla., for plaintiff.

Dennis Thompson, Clearwater, Fla., for defendant.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on both parties' motions for summary judgment. The Court also has for consideration the defendant's motion to strike certain affidavits filed by the plaintiff.

The Court denies Defendant's motion to strike certain affidavits filed by the Plaintiff in response to the Defendant's motion for summary judgment. The Court has read those affidavits and has considered them in making its ruling on both parties' motion for summary judgment.

### FACTS

Plaintiff, Jackson National Life Insurance Company (Jackson), filed a complaint for Declaratory Decree requesting this Court enter a judgment that Jackson is not liable for $200,000.00 of life insurance coverage under the policy of insurance issued to the decedent, Richard N. Proper, and declare the policy of insurance void *ab initio*. Jackson has moved for summary judgment on two grounds. First, Jackson argues that Mr. Proper's policy should be declared void *ab initio* under Florida Statute Section 627.409(1) because Mr. Proper made certain misrepresentations, omissions and incorrect statements in his application for life insurance that are highly material to his eligibility for a Yearly Renewable Term to 100 policy and if Jackson had known the true facts, it would not have issued Mr. Proper a policy for insurance. Mr. Proper is alleged to have failed to provide any information concerning his problems swallowing solids and liquids, his hospitalization and treatment for chest

pains, his use of prescription medications and his substantial weight loss.

In addition, Jackson argues that Mr. Proper's policy should be declared void *ab initio* because Mr. Proper failed to give Jackson written notice of his change in health prior to the delivery of his Policy. Mr. Proper did not inform Jackson in writing that he had been diagnosed as having cancer of the esophagus.

Defendant Deborah M. Proper has filed a counterclaim for the $200,000.00 of life insurance benefits allegedly due and owing to Mrs. Proper as to the policy's named beneficiary. Mrs. Proper has moved for summary judgment on the basis that Jackson is not able to sustain its burden of proof on the issue that the unreported medical incidents were material to the issuance of the policy under any of the provisions of Florida Statute Section 627.409. The Defendant also argues that Jackson has either waived or is estopped from claiming that it was entitled to written notice of Mr. Proper's change in health because Mr. Proper informed Jackson's insurance agent of the cancer when the policy was delivered.

On June 9, 1988, Mr. Proper completed Part I and Part II of the insurance application by supplying certain information including medical information to life insurance agent James A. Burns. Part III of the application was completed by Mr. Proper on July 14, 1988 when he supplied the required medical information to Carol Toscani, a registered nurse. Mr. Proper signed each part of the application after it was completed.

The language directly above Mr. Proper's signature in Part I of the application which was incorporated into the policy stated that:

> I understand that no policy based on this application will be effective unless all of my statements and answers in the application continue to be true as of the date I receive the policy. I understand that if my health or any of my answers or statements change prior to the delivery of the policy, I must so inform the company in writing.

(Plaintiff's Memorandum at 4, *citing*, Application for Life Insurance, Exhibit "A," Affidavit of Jose R. De La Garza.)

In Part II of the application which was incorporated into the policy stated directly above Mr. Proper's signature that:

> I (We), hereinafter jointly referred to as I, represent that all statements and answers made in all parts of this application are full, complete and true to the best of my (our) knowledge and belief. It is agreed that:
>
> (a) all such statements and answers shall be the basis of any insurance issued.
>
> (b) no agent or medical examiner can make, alter or discharge any contract, accept risks, or waive the company's rights or requirements. No information or statement made available or given by or to the agent or examiner shall bind the company unless put in writing in this section.
>
> I understand that no policy based on this application will be effective unless all of my statements and answers in the application continue to be true as of the date I receive the policy. I understand that if my health or any of my answers or statements change prior to the delivery of the policy, I must so inform the company in writing.

(*Id.*)

Part III of the application which was incorporated into the policy also stated directly above Mr. Proper's signature that:

> I understand that no policy based on this application will be effective unless all of my statements and answers in the application continue to be true as of the date I receive the policy. I understand that if my health or any of my answers or statements change prior to the delivery of the policy, I must so inform the company in writing.

(*Id.* at 5.)

### Failure to Disclose Swallowing Problems

In both Part II and Part III of the application, Questions 1(a) asked:

(1) Have you ever been treated for, or ever had any indication of:

(a) Disorder to the eyes, ears, nose, mouth or throat?

(Plaintiff's Memorandum at 5. Application for Life Insurance, Exhibit "A," Affidavit of Jose R. De La Garza.)

Mr. Proper answered "no" to Question 1(a) in Part II. However in Part III, Mr. Proper answered "yes" to the same question. He explained that he had a tonsillectomy with no complications when he was six years old and that he had to wear corrective bi-focal lenses. (*Id.*)

On June 17, 1988, three days after Mr. Proper completed his application for insurance, he visited his family physician, Dr. David B. Brecher. (Plaintiff's Memorandum at 5, *citing* Deposition of David B. Brecher, M.D., February 16, 1990, at 4–5.) At this time, Mr. Proper complained of a one-month history of swallowing problems. (*Id.*) Mr. Proper told Dr. Brecher that over the month's time he had difficulty swallowing solids and liquids and had a mild pain which Dr. Brecher diagnosed as epigastric pain. (*Id.*)

On June 28, 1988, only two weeks after Mr. Proper completed his application for insurance, Dr. Karoly Kiss performed an endoscopy on Mr. Proper and discovered a long tubular mass partially obstructing his esophagus. (Deposition of Karoly Kiss, M.D., February 16, 1990, at 10.) A biopsy was taken on the same day. (*Id.*) The biopsy was positive and Mr. Proper was diagnosed as having cancer of the esophagus on June 29, 1988. (*Id.*)

On July 18, 1988, Mr. Proper was admitted to Shands Teaching Hospital in Gainesville, Florida for further treatment. (Shands Hospital Discharge Summary attached as Exhibit No. 2 to Memorandum in Support of Plaintiff's Motion for Summary Judgment.) On admission to Shands Hospital, Mr. Proper told Dr. Vogel that he had a five-month history of swallowing problems. (Plaintiff's Memorandum at 6, *citing*, Shands Hospital Discharge Summary; Deposition of Karoly Kiss, M.D., February 16, 1990, at 13; Deposition of David B. Brecher, M.D., February 16, 1990, at 16.)

Mr. Proper died of cancer of the esophagus on December 10, 1988. His death occurred within the two year contestable period for insurance claims.

*Failure to Reveal Hospitalization and Treatment for Chest Pains*

In Part II and Part III of his application for life insurance, Questions 1(d), 2(a), 2(b), 2(c), and 2(d) Mr. Proper was also asked:

1. Have you ever been treated for, or ever had any indication of:

(d) chest pain, discomfort or tightness; palpitations, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessel?

2. Have you, in the past five years:

(a) been advised or treated by a physician or other medical practitioner?

(b) been a patient in a hospital clinic, or medical facility?

(c) had an electrocardiogram, x-ray or other diagnostic tests?

(d) been advised to have any diagnostic test, hospitalization or surgery which was not completed?

(Plaintiff's Memorandum at 7–8, *citing* Application for Life Insurance, Exhibit "A," Affidavit of Jose R. De La Garza.)

In Part II, Mr. Proper answered "no" to all of these questions. (*Id.*) In Part III, Mr. Proper also denied having heart problems, being treated by a physician, being a patient in a hospital or being advised to have any surgery which was not completed. (*Id.*) Mr. Proper did acknowledge that he had had an electrocardiogram in the past five years. (*Id.*) He explained that he had undergone a pre-tennis physical in 1985 that included an EKG, stress test and that the result of this test was normal. (*Id.*)

However, on February 18, 1988, four months prior to the execution of his application for life insurance, Mr. Proper suffered chest pains. (Plaintiff's Memorandum at 8, *citing*, Deposition of Howard J. Barron, M.D., April 12, 1990 at 16, 19–20.) Mr. Proper went to see Dr. Howard Barron because of these chest pains. (*Id.*) Mr. Proper was then hospitalized, given diag-

nostic tests including an EKG and an x-ray, underwent a cardiac catheterization and was diagnosed as having new angina pectoris. (*Id.*) Dr. Barron defined new angina pectoris as chest discomfort resulting from coronary heart disease. (Deposition of Howard J. Barron, M.D., April 12, 1990, at 16.)

### Failure to Disclose Weight Loss and Prescription Medications

In both Part II and Part III of his application for life insurance, Mr. Proper denied that he had lost or gained any weight in the past year. (Plaintiff's Memorandum at 9, *citing,* Application for Life Insurance, Exhibit "A," Affidavit of Jose R. De La Garza.) Additionally, Mr. Proper denied that he was presently taking any prescribed medication. (*Id.*)

However, from Mr. Proper's visit to Dr. Brecher on June 17, 1988, Dr. Brecher's medical records indicate that he had suffered a weight loss of approximately 38 pounds in the several months prior to his visit. (Plaintiff's Memorandum at 9, *citing,* Deposition of David B. Brecher, M.D., February 16, 1990, at 5–6.) Dr. Brecher's records also indicate that Mr. Proper was taking the prescription medications Tagamet and Zantac. (*Id.*)

### STANDARD FOR SUMMARY JUDGMENT

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986):

In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial.

*Id.* 477 U.S. at 322, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

The Court also said, "Rule 56(c) therefore, requires that the moving party go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing there is a genuine issue for trial." *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

Florida Statute Section 627.409(1)

Florida Statute Section 627.409—Representations in applications; warranties provides:

(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract unless:

(a) They are fraudulent;

(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or

(c) The insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

The plain meaning of this statute was upheld by the Florida Supreme Court. *Swift v. North American Company for Life and Health Insurance*, 677 F.Supp. 1145, 1148 (S.D.Fla.1987) (citing *Continental Assurance Co. v. Carroll*, 485 So.2d 406, 409 (Fla.1986)). Therefore, only three elements must be proven in order for Section 627.409(1) to operate as a bar to recovery on a policy for insurance. The insurer must prove that:

(1) there were misrepresentations, omissions, concealment of facts or incorrect statements;

(2) in an application for insurance;

(3) that:

(a) are fraudulent, or

(b) are material to the risk taken by the insurer, or

(c) the insurer in good faith would not have issued the policy or would have altered the policy had it known the true facts.

(*Id.*)

■ Even unintentional misrepresentations or omissions in an application for insurance will prevent a recovery on a policy if the insurer proves that the misrepresentations or omissions are material to the risk taken or that the insurer would have altered the policy or would not have issued the policy had the true facts been revealed. *Continental Assurance Co. v. Carroll*, 485 So.2d 406, 409 (Fla.1986) (citing *Life Insurance Co. of Virginia v. Shifflet*, 201 So.2d 715, 719 (Fla.1967)); *Old Southern Life Insurance Co. v. Kirby*, 522 So.2d 424, 426 (Fla. 5th DCA 1988).

■ A misrepresentation or omission is material under Section 627.409(1) if the facts accurately stated might reasonably have influenced the insurer in deciding whether it should accept or reject the risk. *Singer v. Nationwide Mutual Fire Insurance Co.*, 512 So.2d 1125, 1128 (Fla. 4th DCA 1987) (quoting *New York Life Insurance Co. v. Kuhlenschmidt*, 218 Ind. 404, 33 N.E.2d 340, 347 (1971). Materiality is not determined by the mere pronouncement of the insurer after death has occurred; the information misrepresented or omitted must be of such character that it would

reasonably have affected the insurer's judgment as to the nature of the risk and amount of premium. *Id.* (quoting 43 Am. Jur.2d Insurance § 1014 (1982)).

In the present case, Defendant does not contest that there were certain facts concerning Mr. Proper's medical history that were not reported in his application for insurance. The only element of Section 627.409 that Defendant does contest is Jackson's claim that these omissions were material to the issuance of the life insurance policy.

■ The evidence from the Shands Hospital Discharge Summary shows that Mr. Proper had been aware of his problems swallowing solids and liquids up to four months prior to his application for life insurance. However, Mr. Proper did not disclose this information to Jackson when he was specifically asked in his application for insurance if he had ever experienced any indication of a disorder to the throat. The materiality of Mr. Proper's failure to disclose his swallowing problems on his application for insurance was attested to by Jose R. De La Garza, the Vice President of Underwriting at Jackson. Mr. De La Garza stated that if Jackson had known of Mr. Proper's swallowing problems, it would have postponed Mr. Proper's application until his problem had been diagnosed and upon the finding of cancer, Jackson would not have issued a policy for insurance on Mr. Proper's life. (Affidavit of Jose R. De La Garza, at para. 17–18).

The existence of Mr. Proper's chest pains were attested to by Dr. Howard Barron. Dr. Barron stated in deposition that Mr. Proper's catheterization revealed some spasm of the arteries and that Mr. Proper was diagnosed as having new angina pectoris, a chest discomfort due to coronary artery disease. (Deposition of Howard J. Barron, M.D., April 12, 1990, at 13, 16.) As with Mr. Proper's swallowing problems, disclosure to Jackson of Mr. Proper's history of hospitalization and treatment for chest pains and the diagnosis of new angina pectoris would have caused his application for insurance to be postponed and

upon the diagnosis of the cancer two weeks after he completed his application, Jackson would not have issued any policy of insurance on Mr. Proper's life. (Affidavit of Jose R. De La Garza, at para. 23–25.)

The materiality of Mr. Proper's failure to disclosure his sudden weight loss of 38 pounds and his use of the prescription medications Tagamet and Zantac is asserted in Mr. De La Garza's Affidavit:

> In either instance, Jackson would have postponed for at least six months consideration of Mr. Proper's application for insurance until Mr. Proper's medical problems had been fully analyzed and diagnosed. Mr. Proper was diagnosed as having adenocarcinoma within the time period his application for insurance would have been postponed and upon the diagnosis of adenocarcinoma, Jackson would not have issued any policy of insurance on Mr. Proper's life.

> (Affidavit of Jose R. De La Garza, at para. 30–31.)

There is no factual dispute as to Jackson's claim that Mr. Proper failed to disclose his history of swallowing problems, heart disease, loss of weight and use of prescription medications. Furthermore, the medical records from Shands Hospital and the depositions of Dr. Barron, Dr. Brecher and Dr. Kiss establish beyond a doubt that Mr. Proper did have a history of swallowing problems, heart disease, weight loss and prescription drug use by the time of his application to Jackson. Nothing presented by the Defendant casts any doubt on the reliability or veracity of these medical reports.

Defendant's only challenge as to the materiality of this unrefuted evidence pertains to the remarks made by the Jackson underwriting committee at the time when the claim on Mr. Proper's policy was being considered. Defendant maintains that there is nothing in the claim file indicating that Jackson definitely would not have issued the policy had it had the medical facts that were omitted by Mr. Proper. The basis for Defendant's argument is that Mr. Myer, Vice President of Underwriting at Jackson, stated that he thought the "only question is if our policy working will stand up legally about health change notification; ..." Further, Dr. Michaud, associate medical director at Jackson, stated that, "we may not have issued preferred plan, but would have rated the client on the basis of his cardiac findings;" and Mr. Isaac, Vice President of Underwriting at Jackson, stated that the "case may have been a postpone." (Claim file, Exhibit "1," Documents 1, 4, 5, Deposition of Jose R. De La Garza.) Defendant claims that because the underwriting committee could not say as a matter of certainty that it would not have issued Mr. Proper's policy after it had the benefit of all the facts which Mr. Proper omitted from his application, the omitted medical history was not material to the risk assumed by Jackson.

Defendant's materiality argument is without merit. First, the underwriting committee voted to deny the claim on Mr. Proper's policy on September 19, 1989. (Claims File, Exhibit "1," Document 16, Deposition of Jose R. De La Garza.) The medical records from Shands Hospital and the deposition testimony of Drs. Brecher and Kiss revealing Mr. Proper's past medical history of difficulty swallowing, weight loss and use of prescription drugs were not available to Jackson until February, 1990. Therefore, Jackson could not make any accurate decisions as to whether it would not have issued the policy to Mr. Proper until it had knowledge of all the medical facts that Mr. Proper omitted from his application. None of the underwriters on the committee knew that Mr. Proper had suffered problems swallowing solids and liquids up to four months prior to his application, that he had lost 38 pounds in the several months prior to his application, or that he had been taking prescription medications at the time of his application. (Plaintiff's Memorandum in opposition to the Defendant's Motion for Summary Judgment at 2–3, *citing* Affidavits of Robert M. Tucker, John Isaac, John Knutson, Dr. Lewis Stewart, and Dr. Andre Michaud.)

Mr. Proper's swallowing problem is highly material because if it had been disclosed it would have affected Jackson's decision

as to whether it should reject or accept the risk of insuring Mr. Proper. Mr. Proper's weight loss and use of prescription medications is also very material because if Jackson had been informed of these facts it would have investigated the reasons for Mr. Proper's weight loss and drug use and would have uncovered additional facts that would have led to a rejection of Mr. Proper's application for insurance. The affidavit of Mr. De La Garza leaves no doubt that had Mr. Proper informed Jackson in his application that he suffered problems swallowing solids and liquids, had lost 38 pounds in the past several months, was taking medication and had been hospitalized and treated for chest pains, Jackson would never have issued a policy for life insurance to Mr. Proper.

Additionally, the test for materiality is not based on the mere pronouncements of an underwriting committee after the death of the insured. The facts omitted by Mr. Proper are material to the risk assumed by Jackson because the true facts might reasonably have influenced Jackson in deciding whether it should accept or reject the risk. *See Singer v. Nationwide Mutual Fire Insurance Company,* 512 So.2d 1125 (Fla. 4th DCA 1987). The Court finds that the medical information omitted by Mr. Proper would reasonably have affected Jackson's judgment as to the nature of the risk involved and the amount of the premium.

Even if this Court were to find that Mr. Proper's history of chest pains arguably was not material to the risk assumed by Jackson, his history of swallowing problems up to four months prior to his application is highly material to his eligibility for Jackson's preferred Yearly Renewable Term To 100 Policy. The Shands Hospital Discharge Summary demonstrates without refute that Mr. Proper knew that he had been experiencing swallowing problems up to four months prior to his application for insurance. (Shands Hospital Discharge Summary, at 1.) Jackson has shown that if it had been aware of this information, it would have postponed Mr. Proper's Policy, and upon the diagnosis of cancer, Jackson would not have issued any policy to Mr.

Proper. Therefore, this Court finds that Mr. Proper's omission as to his history of swallowing problems on his application for insurance is material to the risk assumed by Jackson and renders the policy unenforceable under Florida Statute Section 627.409(1).

Defendant Proper does not discuss whether Jackson in good faith would not have issued the policy or would not have issued the policy on the same terms if the true facts had been known. The declarations of Jose R. De La Garza establish that if Mr. Proper's medical history had been properly disclosed, his application would have been postponed pending an investigation and upon discovery that Mr. Proper's swallowing problems were the direct result of cancer, Jackson never would have issued the original policy. This is not refuted by the Defendant. Defendant's only challenge to Mr. De La Garza's Affidavit is based on his credibility and authority to execute the Affidavit and that his Affidavit is at variance with the statements by the underwriting committee in the claims file.

Mr. De La Garza is the Vice President of the Underwriting Department at Jackson and in his Affidavit Mr. De La Garza states: "I have personal knowledge regarding the subject policy of insurance, the underwriting criteria of JNL [Jackson], Richard N. Proper's underwriting file, and the past medical history and facts related to Richard N. Proper." (Affidavit of Jose R. De La Garza, at para. 2.) As the Vice President of the Underwriting Department, Mr. De La Garza has the authority to execute such an affidavit. Since Mr. De La Garza was also able to gain personal knowledge of the events prior to the execution of the affidavit, (Plaintiff's Memorandum in opposition to Defendant's Motion for Summary Judgment, at 5), Defendant's attack on Mr. De La Garza's credibility and authority cannot be supported.

Further, Mr. De La Garza's deposition is not at variance with the statements made by the underwriting committee. The underwriting committee did not have the benefit of the Shands Hospital report or the depositions of Drs. Brecher and Kiss when

they decided to deny the claim on Mr. Proper's policy. (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment at 3, citing Affidavits of Robert M. Tucker, John Isaac, John Knutson, Dr. Lewis Stewart, and Dr. Andre Michaud.) Mr. De La Garza did have the benefit of the Shands Hospital report and the depositions of Drs. Brecher and Kiss when he gave his affidavit. Being in possession of all of the facts, Mr. De La Garza was in the better position to declare that Jackson in good faith would not have issued the policy to Mr. Proper had it known the true facts. Because Jackson in good faith would not have issued the policy had it known the true facts, Mr. Proper's omissions as to his medical history on his application for insurance operate as a bar to recover on the policy under Florida Statute Section 627.409(1).

### Failure to Give Jackson Written Notice of a Change in Health Prior to Delivery of the Policy

In addition to the material omissions made by Mr. Proper in his application for insurance, Jackson argues, in its Motion for Summary Judgment, that Mr. Proper's Policy should be declared void *ab initio* because Mr. Proper failed to give Jackson written notice of his change in health prior to the delivery of the policy. Parts I, II, and III of Mr. Proper's application which was incorporated into his policy required Mr. Proper to give Jackson written notice of any change in his health prior to the delivery of his policy. Mr. Proper was diagnosed as having cancer on June 29, 1988 (Plaintiff's Memorandum at 11, *citing* Deposition of Dr. Brecher, at 11–13; Deposition of Dr. Kiss, at 10–11; Deposition of Deborah Proper, at 6), and his policy for insurance was delivered after July 1, 1988 (*Id., citing* Deposition of Deborah Proper, at 5). At no time prior to the delivery of his policy for insurance did Mr. Proper advise Jackson in writing that he had cancer of the esophagus. (*Id., citing* Deposition of Deborah Proper, at 7; Affidavit of Jose R. De La Garza, at para. 34.) Jackson states that if it had been advised of the change in Mr. Proper's health prior to the

delivery of the policy for insurance, Jackson would not have issued any policy for insurance on the life of Mr. Proper. (*Id., citing* Affidavit of Jose R. De La Garza, at para. 35.)

Defendant's argument in opposition to Jackson's Motion for Summary Judgment and in support of the Defense's Motion for Summary Judgment is that Jackson has either waived or is estopped from claiming that it was entitled to written notice of Mr. Proper's change in health. (Defendant's Memorandum, at 12–13.) Defendant asserts that Mr. Proper told agent Burns that he had been diagnosed as having cancer when Agent Burns delivered the policy. (*Id.*) Following Florida law, Defendant states that facts within the knowledge of agent Burns are deemed to be facts within the knowledge of Jackson, thus Jackson had knowledge of the change in health of Mr. Proper. (Memorandum of Defendant, at 11–12, *citing, Poole v. Travelers Insurance Co.,* 179 So. 138 (Fla.1938); *Southern Rack and Ladder, Inc. v. Sexton,* 474 So.2d 847 (Fla. 1st DCA 1985).) Since Jackson had knowledge of Mr. Proper's change in health, Defendant claims that the principles of waiver and estoppel should be applied to prevent Jackson from raising the issue of a written statement. (*Id.* at 12–13, *citing, Russell v. Eckert,* 195 So.2d 617, 622 (Fla. 2d DCA 1967); *Gulf Life Insurance Co. v. Green,* 80 So.2d 321 (Fla.1955).)

In response, Jackson asserts that although James F. Burns was licensed to sell insurance for Jackson, Mr. Burns was an not an agent for Jackson. (Deposition of James F. Burns, at 4.) Jackson argues that Mr. Burns is an independent broker because: (1) Mr. Burns is licensed to sell insurance for several other insurance companies; (2) he can place insurance with and receive proposals from more than one company; (3) he signed a broker contract with Jackson; (4) Mr. Proper solicited Mr. Burns; and (5) Mr. Burns placed additional insurance for Mr. Proper other than life insurance with Jackson (Plaintiff's Memorandum at 12–14, *citing,* Individual Agent Licensing Data Sheet, Exhibit No. 1, Affidavit of Thomas J. Meyer; Deposition of

James F. Burns, April 16, 1990, at 4–5, 9, 12, 14). As an independent broker, Jackson asserts that Mr. Burns was actually acting as the agent for Mr. Proper, the insured. (Plaintiff's Memorandum in opposition to Defendant's Motion for Summary Judgment, at 12, *citing, Carega Service Station Corp. v. Federal Emergency Management Agency,* 558 F.Supp. 45 (S.D.Fla. 1983)). Jackson also claims that Mr. Burns was an agent for Mr. Proper and not for Jackson because Mr. Burns was a good friend and neighbor of Mr. Proper, they had dinner together socialized together and played golf together. (Plaintiff's Memorandum at 13, *citing,* Deposition of James F. Burns, at 12, 15, 55.)

Because this Court has found that Mr. Proper made certain material omissions in his application to Jackson for life insurance that render his policy for insurance unenforceable pursuant to Florida Statute Section 627.409(1), this Court does not need to rule on the issue of Mr. Proper's failure to give Jackson written notice of his change in health prior to delivery of his policy for insurance. Whether Mr. Burns is an agent for Jackson or the agent for Mr. Proper does not dispel the fact that Mr. Proper failed to inform Jackson on his application for insurance that he was suffering problems swallowing solids and liquids, that he had been hospitalized and treated for chest pains, that he had lost 38 pounds in the past several months, and that he was currently taking prescription drugs.

On the basis of all the facts before the Court, there is no genuine issue as to the fact that Mr. Proper made material omissions in his application for insurance which prevent a recovery under his policy for insurance pursuant to Florida Statute Section 627.409(1). Summary Judgment is granted to the Plaintiff. Accordingly, it is

ORDERED that Defendant's motion to strike certain affidavits filed by the Plaintiff is denied; it is further

ORDERED that Plaintiff's motion for summary judgment is granted. The Clerk is directed to enter judgment in accordance with this Order.

DONE and ORDERED in Chambers, Tampa, Florida on this 12th day of March, 1991.