712 So.2d 1261 (1998)
Jack T. KIESER, Appellant,
v.
OLD LINE LIFE INSURANCE COMPANY OF AMERICA, Appellee.
No. 97-2208.
District Court of Appeal of Florida, First District.
July 20, 1998.
*1262 Alan C. Jensen, Jacksonville, for Appellant.
Michael I. Coulson of Saalfield, Coulson, Shad & Jay, P.A., Jacksonville, for Appellee.
WEBSTER, Judge.
Appellant seeks review of an adverse summary final judgment entered on his claim that appellee had wrongfully refused to pay the proceeds of a life insurance policy on his brother to him, as the named beneficiary. The trial court's ruling was based upon its conclusions that there were no genuine issues as to any material fact; that the application for insurance "contained misrepresentations and omissions which concealed important information material to the acceptance of the risk ... assumed ... and that had the [appellee] known the true facts, it would not have issued the policy or would have done so on different terms"; and that, as a matter of law, recovery was precluded by section 627.409, Florida Statutes (1987). We affirm.
Appellant (Jack Kieser) commenced this action in 1995. In his amended complaint, he alleged that appellee (Old Line) had issued an insurance policy on the life of Frank Kieser in 1988, naming Jack as the beneficiary; that Frank had died in 1990; that Jack had made a demand on Old Line to pay him the proceeds of the policy; and that Old Line had refused to do so. Old Line's answer admitted that it had issued the policy in question; denied all of the remaining material allegations of the amended complaint; and asserted several affirmative defenses, including that Frank had made misrepresentations on the application for insurance which were sufficient to bar recovery pursuant to section 627.409, Florida Statutes (1987).
Old Line subsequently filed a motion for summary judgment in which it argued that the undisputed facts established that the application for insurance submitted by Frank had contained misrepresentations and omissions which were material to acceptance of the risk; that Old Line either would not have issued the policy, or would have issued it at a different rate, had it not relied on the misrepresentations and omissions; and that, therefore, recovery was precluded by section 627.409, Florida Statutes (1987). The motion was accompanied by several exhibits, including the affidavit of Old Line's senior vice president for underwriting, Michael Flemming.
In his affidavit, Flemming states:
The receipt and analysis of the application for a life insurance policy provides the basis for an insurance carrier to determine the nature of the risk being assumed and to determine the amount of the premium that will be charged to properly underwrite the risk being assumed by the issuance of the policy.
If any of the information provided by the application is misrepresented or provided in a fraudulent manner, then the insurance carrier cannot realistically assess the nature of the risk being assumed, cannot properly assess the premium rates to be charged and cannot properly assess the amount of the policy benefits.
Flemming's affidavit then identified seven questions on the application which he claimed Frank had not answered truthfully: (1) whether he had any other life insurance applications pending; (2) whether he had smoked cigarettes during the preceding 12 months; (3) whether he had had, been told he had, or been treated for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC); (4) whether he had had high blood pressure, chest pain, palpitation, heart attack, stroke, heart murmur, hemorrhage, rheumatic fever, or a disorder of the heart or blood vessels; (5) whether he had had any impairment of vision or hearing, or any disorder of the eyes, ears, nose, or throat; (6) whether he had received treatment or observation in any hospital or institution during the preceding five years; and (7) whether he had received treatment from, or consulted with, any physician or practitioner during the preceding five years. According to Flemming, had Frank answered any of those questions in the affirmative, Old Line either would not have issued the policy, or would have issued it only at a higher premium rate. Jack filed an affidavit in *1263 opposition to the motion for summary judgment. However, most of it would be inadmissible in evidence as conclusions, opinions or speculation. This appeal follows the trial court's order granting Old Line's motion.
Section 627.409(1), Florida Statutes (1987), reads:
All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
(a) They are fraudulent;
(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or
(c) The insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
As a general rule, a misstatement in, or omission from, an application for insurance need not be intentional before recovery may be denied pursuant to section 627.409. Rather, it need only be material. Continental Assurance Co. v. Carroll, 485 So.2d 406 (Fla. 1986); Life Ins. Co. of Virginia v. Shifflet, 201 So.2d 715 (Fla.1967). However, the supreme court has recently held that the parties to a contract of insurance may agree that only intentional misrepresentations and omissions will bar recovery. Green v. Life & Health of America, 704 So.2d 1386 (Fla. 1998). In this case, Frank was required to sign two separate parts of the application, the first of which is subject to the general rule, and the second of which is subject to the Green exception.
To be entitled to the entry of a summary judgment, Old Line was obliged to demonstrate conclusively that no genuine issue of material fact existed, even after all reasonable inferences had been drawn in favor of Jack; and that, based upon the undisputed facts, it was entitled to a judgment as a matter of law. E.g., Moore v. Morris, 475 So.2d 666 (Fla.1985); Holl v. Talcott, 191 So.2d 40 (Fla.1966). Having carefully reviewed the record, we conclude that Old Line carried its burden.
On the part of the application not subject to the Green exception, Frank represented that he had no other applications for life insurance pending. However, the evidence is undisputed that Frank and his insurance broker filled out four applications at the same time, seeking life insurance from three other companies in addition to Old Line. They intended to "bundle" the policies so that Frank might obtain the $500,000 in coverage that he desired without having to submit to a blood test. The evidence is also undisputed that, at the time the applications were being filled out, the broker was acting as Frank's agent, rather than as the agent of Old Line. See, e.g., Steele v. Jackson Nat'l Life Ins. Co., 691 So.2d 525 (Fla. 5th DCA 1997) (as a general rule, an independent agent or broker is considered the agent of the insured as to matters related to the application for, and procurement of, insurance). It is further undisputed that, in the words of Old Line's senior vice president for underwriting,
had [Frank] disclosed the insurance applications with the other insurance companies, Old Line's underwriters would have questioned what prompted the sudden interest in life insurance and would have obtained an inspection report. One purpose of the inspection report would be to determine if Jack Kieser had a $500,000.00 insurable interest in the life of his brother. Old Line's investigation would have failed to disclose any financial insurable interest that Jack Kieser had in his brother's life. Therefore, Old Line would have denied the application based on lack of financial insurable interest. Even if Old Line had determined that there was a sufficient insurable interest, it would have required urine and blood tests prior to considering approval of the insurance.
*1264 Finally, it is undisputed that Frank died of AIDS less than two years after the application had been filled out.
It is true, as Jack argues, that an associate of Frank's agent submitted an affidavit in which he claimed that, before the application was completed, he spoke to someone in Old Line's marketing department, who told him that "bundling" life insurance policies was acceptable (i.e., that Old Line would consider writing a policy that was "bundled" with those of other companies). However, the associate does not say that he communicated any of the relevant information required by the application (including the applicant's name) to anybody in Old Line's marketing department, or that anybody connected with Old Line in any way said that the company would underwrite the risk that way. We conclude that, absent such representations, there is no genuine dispute as to a fact material to this issue. Without such representations, one cannot properly draw the inference that anybody associated with Old Line was aware of the specifics of this application, including that it was Frank's intent to "bundle" the policy requested with those of other companies.
On the part of the application that is subject to the Green exception, Frank represented that he had not received treatment from, or consulted with, any physician or practitioner during the previous five years. However, the evidence is undisputed that Frank had undergone a cataract extraction with insertion of an intraocular lens implant some three years before the application was filled out; a right upper-lid blepharoplasty two years before the application was filled out; and a medical examination some four months before the application was filled out. It is further undisputed that Frank had undergone Human Immunodeficiency Virus (HIV) testing approximately one year before the application was filled out. Finally, it is undisputed that, had Frank answered the question correctly, Old Line would have obtained all of his medical records, and either would not have approved the application or would have issued the policy at a higher premium rate. Moreover, the fact that the answer to this question is subject to the Green exception has no bearing on the outcome because Frank clearly knew that he had been seen by the physicians and that, therefore, his negative answer was untruthful.
The two misrepresentations already discussed provide ample support for the trial court's decision. See de Guerrero v. John Hancock Mut. Life Ins. Co., 522 So.2d 1032 (Fla. 3d DCA 1988) (affirming a summary judgment in favor of the insurer pursuant to section 627.409 when the undisputed evidence established that the insured made several misrepresentations on his application regarding his medical history, including failing to list recent consultations with his physician, and the undisputed affidavits filed by the insurer established that the policy either would not have been issued or would have been issued on different terms had the questions been answered truthfully). Accordingly, we find it unnecessary to address the five additional answers which Old Line argued to the trial court also constituted material misrepresentations. The summary final judgment is affirmed.
AFFIRMED.
LAWRENCE, J., and SHIVERS, DOUGLASS B., Senior Judge, concur.