Donald Gary MIMS, Plaintiff,

v.

The OLD LINE LIFE INSURANCE COMPANY OF AMERICA, et. al., Defendants.

No. 97–294–CIV–OC–TJC.

United States District Court, M.D. Florida, Ocala Division.

March 10, 1999.

Alan Boyd Fields, Jr., Palatka, FL, for Plaintiff.

Robert A. Freyer, Orlando, FL, for Defendants.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]

CORRIGAN, United States Magistrate Judge.

This case is before the Court on Defendant Old Line Life Insurance Company's (defendant) Motion for Summary Judgment and supporting memorandum (Doc. 105), and Appendix filed under seal (Def's App.).[2] Defendant also filed a supplement to this motion (Doc. 127), and plaintiff, Donald Gary Mims, has filed a response (Doc. 129), and an Appendix, Doc. 130 (Pltf's App.). The Court heard oral argument on the summary judgment motion on February 10, 1999.

### I. PROCEDURAL BACKGROUND

Plaintiff originally filed suit in state court to recover $500,000 in life insurance benefits from defendant. (Doc. 3).[3] Defendant successfully removed the suit to federal court based on diversity jurisdiction. (Doc. 1). On August 25, 1998, plaintiff filed a third amended complaint. (Doc. 87). Defendant filed an answer with affir-

---

1. The parties have consented to exercise of jurisdiction by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.

2. *See* Doc. 122, Order granting motion to file appendix under seal. Contemporaneously with this Order, the Court has ordered that only Appendix Exhibits 6 and 9 remain under seal and that all other portions of the Sealed Appendix (S–2) be unsealed and docketed.

3. The original complaint included defendants A & L Insurance Underwriters, Inc. and Blanca Giraldez, a licensed insurance agent. With plaintiff's consent, these defendants subsequently were dismissed. *See* Docs. 86 & 47.

mative defenses and a counterclaim for rescission. (Doc. 90). Plaintiff answered the counterclaim (Doc. 102) and defendant now moves for summary judgment on its counterclaim and affirmative defenses, both of which allege that material misrepresentations made by the insured entitle it to rescind the policy.

## II. STANDARD OF REVIEW

The Court must review the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). .Summary judgment is appropriate only when there are no disputed issues of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1326 (11th Cir.1998). Once the moving party has sufficiently supported its motion, the non-moving party bears the burden of establishing facts that show a genuine factual dispute that precludes the entry of summary judgment. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not merely rest on the pleadings but must affirmatively establish through the depositions, affidavits, answers to interrogatories or other admissible evidence, that a triable material fact remains. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

## III. STATEMENT OF FACTS

The third amended complaint, other pleadings, memoranda, affidavits, and other evidence in the record, construed in the manner most favorable to plaintiff, disclose the following details.

Plaintiff is the named beneficiary of a $500,000 life insurance policy issued in the name of Juana Bennett (Bennett) on November 27, 1995. (See Doc. 101; Doc. 8, Ex. E). The policy incorporates, *inter alia*, Bennett's insurance application, Answers to Medical Examiner, and a Foreign Travel Or Residence Supplement To Application For Insurance (Foreign Travel Supplement).

Bennett's signed insurance application, dated September 15, 1995, contains the following relevant information: Bennett had lived at her current Miami Lakes address for two years; she lived at a previous address for ten years; she was employed in antiques sales for five years at a Miami business called Rare Relics, Ltd.; her income was $30,000; her spouse's income was $70,000; her net worth was approximately $300,000; she never had life or health insurance declined, modified, or rated; she had not been treated for any of over 80 listed diseases, symptoms, disorders, defects, or conditions; she had not received treatment or consultation with any other physician or practitioner in the last five years other than hospitalization for childbirth;[4] she intended to travel or reside outside of the United States; and she planned to pay premiums by automatic withdrawal from her checking account. (Def's App., Ex. 1).

On September 20, 1995, as part of the underwriting process, Bennett met with Dr. Jose Rodriguez, a medical examiner, and completed and signed Old Line Life's Answers to Medical Examiner form. The form indicates that Bennett answered that she was in good health and had an essentially negative medical history. At

---

4. As noted by plaintiff, in answer to the question "Are all persons proposed for insurance in good health?", the "no" box is checked on the application. However, all other answers to questions regarding Bennett's medical history indicate that she suffered from no ailments whatsoever and her medical history was negative, except for hospitalization for the birth of a child. In addition, when this same question regarding the applicant's good health was asked by the medical examiner on September 20, 1995, the response was "yes."

this time, Bennett also signed a form authorizing defendant to collect information related to Bennett's health from any organization, institution, or person having such information. (Def's App., Ex. 3).

On October 17, 1995, Bennett signed a Foreign Travel Supplement which indicated that her occupation was sales and that she had been born in, was a citizen of, and intended to travel to Bolivia. Bennett indicated that she would be remaining in Bolivia for one month to visit her four children who lived in Bolivia, which she liked to do about twice a year. (Def's App.Ex. 4).

Bennett also provided information to a Systematic Business Services Inc. representative as part of the underwriting process. (Def's App.Ex. 5). The representative conducted a telephone interview with Bennett and recorded information that is consistent with information on Bennett's application, Answers to Medical Examiner form, and Foreign Travel Supplement. Defendant issued the policy in the amount of $500,000 on November 27, 1995.

On July 29, 1996, plaintiff called defendant and advised that Bennett had died on June 25, 1996 in Bolivia from cardiopulmonary arrest due to Chagas disease.[5] Defendant sent a Claimant's Statement form to plaintiff which was completed and returned to defendant on August 11, 1996.

The insurance policy contains a two year contestability reservation. Since plaintiff was seeking to collect on the policy eight months after its issuance, defendant began an investigation of the Bennett policy and on January 24, 1997, defendant issued a letter to plaintiff's attorney advising that the defendant was rescinding the policy on the basis of material misrepresentations. Defendant also enclosed a check payable to plaintiff in the amount of $466.06 as a full refund of all premiums paid, plus interest,

since the issue date of the policy. This action ensued.

## IV. DEFENDANT'S SUMMARY JUDGMENT MOTION

Defendant's counterclaim and affirmative defenses allege that it has uncovered material misrepresentations related to Bennett's address, income, net worth, employment, driving and driver's license history, occupation, past medical history, medical treatment, rejection of insurance, and foreign travel plans. (Doc. 90). Defendant argues that its proof of material misrepresentations leaves no issue of triable fact and, therefore, warrants summary judgment.

In response, plaintiff has raised issues regarding irregularities of the application process and argues that, as a result of these alleged irregularities, Juana Bennett cannot be held to have misrepresented information contained within the application. Plaintiff also disputes that the medical history uncovered by defendant actually relates to the same Juana Bennett who applied for the policy. Plaintiff further argues that the materiality of any misrepresentation is for the jury.

The Court finds that the issue of misrepresentations related to Bennett's medical history which are contained within the Answers to Medical Examiner (Doc. 101) is dispositive. These misrepresentations were untainted by any of the alleged irregularities which may have attended the rest of the application process and, as discussed below, the Court finds these misrepresentations to be material as a matter of law. Thus, the Court does not address any other misrepresentations alleged by defendant nor does it address plaintiff's arguments related to any irregularity in the rest of the application process or the mate-

---

5. Chagas Disease is caused by parasites transmitted through bites of reduviid bugs and can lead to cardiac failure or a host of chronic ailments. 28 Dorland's Illustrated Medical Dictionary 479, 1751 (1994). Chagas Disease is rare in industrialized areas but is a major cause of death in rural areas of Central and South America. Elaine M. Sloand et al., *Safety of the Blood Supply*, 11/1/95 JAMA 1368, at 23 (1995).

riality of any of the other alleged misrepresentations.

### A. Elements of a claim for misrepresentation.

Under Florida law, an insurer may rescind an insurance policy on the grounds of misrepresentation if it can prove either

(a) [t]he misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer[; or]

(b) [i]f the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy, or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in loss.

Florida Statutes § 627.409(1) (1995).

■ Under the statute, an insurer is not required to prove that any misrepresentation was made intentionally or knowingly. *Kieser v. Old Line Life Ins. Co. of America*, 712 So.2d 1261, 1263 (Fla. 1st DCA 1998); *Continental Assur. Co. v. Carroll*, 485 So.2d 406, 409 (Fla.1986). However, in *Green v. Life & Health of America*, 704 So.2d 1386 (Fla.1998), the Florida Supreme Court held that the parties may modify this standard by including qualifying language in the insurance contract. In *Green*, the application contained the following language, below which the plaintiff signed his name:

The answers given by me are full, true and complete to the best of my knowledge and belief. All statements made

herein are deemed representations and not warranties.

*Id.* at 1388. The insurance company stipulated that there was no evidence that the plaintiff was aware of his true medical condition, despite medical records which established that he was suffering from chronic renal failure; the lower court ordered summary judgment in favor of the insurer. *Id.* The Florida Supreme Court quashed the summary judgment order, holding that when an insurance policy contains "knowledge and belief" language, an insured's answers which are made "to the best of the insured's 'knowledge and belief' [are not] misstatements within the meaning of section 627.409, Florida Statutes (1993) and therefore cannot provide the grounds for the insurer's rescission of the insurance policy." *Id.* at 1392.[6]

■ The documents signed by Bennett contain similar "knowledge and belief" statements. Above the questions regarding an applicant's current health and medical history, the application states that these questions "are to be answered to the best of the applicant's *knowledge and belief.*" (See Doc. 101) (emphasis supplied). Additionally, above Bennett's signature on the Answers to Medical Examiner form, it states "I hereby declare to the *best of my knowledge and belief,* the information given above is correctly recorded, complete and true, and I agree that the Company, believing it to be true, shall rely and act upon it accordingly." *Id.* (emphasis supplied). Therefore, in accordance with *Green,* defendant must show that Bennett intentionally made the misrepresentations that defendant claims as grounds for rescission. *Kieser,* 712 So.2d at 1263.

■ However, this additional burden is not necessarily fatal to an insurer's motion for summary judgment because an appli-

---

**6.** Citing *Fabric v. Provident Life & Acc. Ins. Co.,* 115 F.3d 908 (11th Cir.1997), defendant argues that it has no burden to prove that misrepresentations were knowingly made. Neither party pointed the Court to the subsequent Florida Supreme Court decision in

*Green.* This is especially surprising since defendant was recently involved in *Kieser v. Old Line Life Ins. Co. of America,* 712 So.2d 1261 (Fla. 1st DCA 1998), in which the court addressed the applicability of the *Green* decision.

cant's belief is to be credited only to the extent that it is not "clearly contradicted by the factual knowledge on which it is based." *Carter v. United of Omaha Life Insurance,* 685 So.2d 2, 6 (Fla. 1st DCA 1996) (citations omitted). Thus, even if Bennett were alive and able to testify regarding her beliefs as to the veracity of information she gave the medical examiner, if the underlying facts known to her were in clear contradiction of her testimony, her stated beliefs would not be credited and she would be deemed to "know" of the misrepresentations. Defendant's burden on summary judgment is to demonstrate as a matter of law that there were underlying facts known to Bennett which "clearly contradicted" her answers to the medical examiner. *See Hauser v. Life General Sec. Ins. Co.,* 56 F.3d 1330, 1335 (11th Cir.1995) (court may find applicant's responses to be false as a matter or law despite "knowledge and belief" provision) (citation omitted); *Kieser,* 712 So.2d at 1264 (evidence that deceased had two medical procedures and one exam within past five years was proof that deceased knew his negative answer was untruthful regarding whether he had been seen by physicians during that time).

■ Additionally, defendant must prove the materiality of such misrepresentations. A misrepresentation is material if it affects the risk undertaken by the insurer. *See* Florida Statutes § 627.409(1) (1995). The misrepresentation need not be one that would have caused the insurer to decline to issue the policy but must only be such that a truthful statement would put a careful insurer on notice that further inquiry is warranted to adequately gauge the risk of issuing a policy. *Singer v. Nationwide Mut. Fire Ins. Co.,* 512 So.2d 1125, 1128 (Fla. 4th DCA 1987). The materiality of a misrepresentation may be shown as a matter of law because some misrepresentations are "so gross that any one would know they are material." *Id.* Misrepresentations related to an insured's medical history or condition obviously af-

fect an insurer's risk in issuing a life insurance policy and may be found to be material as a matter of law. *See Jackson Nat. Life Ins. Co. v. Proper,* 760 F.Supp. 901, 906–07 (M.D.Fla.1991) (summary judgment ordered for insurer where beneficiary could not rebut evidence that insured's failure to disclose physician visit, history of weight loss, and use of prescription medication were material to insurer's risk); *Kieser,* 712 So.2d at 1264 (summary judgment order affirmed where insured's untruthful answers regarding medical history prevented insurer from adequately estimating its risk in issuing policy); *Wisconsin Nat. Life Ins. Co. v. Leichter,* 452 So.2d 1052 (Fla. 3rd DCA 1984) (misrepresentation regarding medical history warranted summary judgment); *Smart v. Time Ins. Co.,* 419 So.2d 686 (Fla. 1st DCA 1982) (summary judgment in favor of insurer affirmed where insured failed to disclose numerous doctor visits for nervousness, headaches, and related problems and listed physician whom she had not seen in years as her regular physician); *Minnesota Mut. Life Ins. Co. v. Candelore,* 416 So.2d 1149, 1150 (Fla. 5th DCA 1982) (reversing denial of insurer's motion for directed verdict because applicant's failure to disclose two doctors' visits in month before application was material misrepresentation as a matter of law); *Cf. Fernandez v. Bankers Nat. Life Ins. Co.,* 906 F.2d 559, 565–67 (11th Cir.1990) (finding insured's misrepresentations created triable issues because record revealed disputed facts as to whether insurer would have issued policy had it known truth regarding insured's illness).

## B. Defendant's factual and legal support for its motion.

■ Bennett met with Dr. Jose Rodriguez, a medical examiner, and completed and signed Old Line Life's Answers to Medical Examiner form on September 20, 1995. This form is "Part B" of the application; thus knowing, material, misrepresentations on this form would entitle defendant to rescind the policy. *See Kieser,*

712 So.2d at 1264. The form indicates that Bennett answered that she was in good health and had a negative (meaning good) medical history except for one hospitalization for childbirth and a tubal ligation, and a general examination in Ocala and lab work, the results of which were negative. However, Bennett in fact failed to disclose numerous visits to hospitals, clinics, and doctors within the relevant time. Defendant has listed twenty non-disclosed visits or diagnoses related to Bennett's medical history. *See* Doc. 105 at 11–12 and Doc. 127. Defendant has filed records of Bennett from Munroe Regional Medical Center Emergency Room, Munroe Regional Medical Center/Shands Hospital and Clinic–Ocala, Palmetto General Hospital, and Sigma Medical Center. *See* Def's App., Ex. 20–23 and Doc. 127. These records reveal a medical history which included diagnoses, related history, or positive test results for: polyarthritis, malaria, syphilis, palate lesions, occipital headaches, posterior cervical adenopathy, tuberculosis, foot fungus, pelvic inflammation, calcification at Achilles tendon, ring worm, herpes, fever blisters, and pain related to injuries sustained in an auto accident. *See* Def's App., Ex. 20—23 and Doc. 127. Medications were prescribed to Bennett for many of these diagnoses or positive tests. *Id.* Additionally, Dr. Rene Hasbun testified he treated Bennett at Sigma Medical Center on thirteen occasions over a two and a half year period, as recently as two days before and nine days following Bennett's completion of the Answers to the Medical Examiner Form. Hasbun depo. (Doc. 110) at 15, 16.

These medical records and testimony directly conflict with Bennett's answers to the medical examiner that she had not seen a doctor in the past five years (except for one hospitalization for childbirth and a tubal ligation, and a general examination) and that she had never been treated for or had any known indication of over 70 symptoms, disorders, diseases, defects, or impairments. *See* Doc. 101. Though under *Green v. Life & Health of America*, 704

So.2d at 1388, a diagnosis of illness is not automatic proof of an insured's knowledge of such illness, no logical leap is required to assume that if, as the record shows, Bennett sought this medical care, she knew she was seeing a doctor and knew her answers to the contrary were false. Additionally, if, as the record shows, Bennett received prescription medication on March 29, 1993 in response to her "complaint[s] of cough expectoration and upper respiratory tract infection," she must have known that she gave a false answer of "no" to Question 7(c): "Have you ever been treated for or ever had any known indication of … persistent hoarseness or cough, … disorder of respiratory system?" If, as the record shows, Bennett received prescription medication on June 8, 1993; December 18, 1993; May 17, 1995; August 22, 1995; and September 18, 1995 in response to the presence of foot fungus, she must have known that she gave a false answer of "no" to Question 7(h): "Have you ever been treated for or ever had any known indication of … disorder of … skin?" If, as the record shows, Bennett had received these medications as recently as two days before meeting with the medical examiner, she must have known that she gave a false answer of "no" to Question 8: "Are you now under observation or taking treatment?" *See Hauser*, 56 F.3d at 1335; *Kieser*, 712 So.2d at 1264.

Defendant contends that such misrepresentations are material because, had the true state of Bennett's health been disclosed, defendant would have further investigated Bennett's medical records. Defendant asserts that such an investigation would have revealed not only the extent of Bennett's medical history (which alone would have caused defendant to decline to issue the policy) but other information which directly conflicted with information on Bennett's application related to her addresses, income, employment, and financial status. In support, defendant offered the affidavit of Joseph Kneip, defendant's Director of Underwriting. (Doc. 123).

Kneip stated that he had been employed as an underwriter for the past sixteen years and that his statements regarding this case were based on his "personal knowledge and upon reference to the books and records of [defendant], including ... [his] review of the underwriting file, the policy, the claim file, [defendant]'s Motion and Memorandum and the Appendix Exhibits." *Id.* at 1. Kneip attested that "the financial condition, medical history, employment, residence and business addresses, other insurance, personal habits and lifestyle, foreign travel and the truthfulness of an applicant are material and important considerations." *Id.* at 2. Kneip further stated that:

If it is discovered that a proposed insured has made *one* misrepresentation, it is probable that there are other misrepresentations leading to the requirement of documentation to support the statements of and information given by an applicant for insurance. Thus, had [defendant] been aware that Bennett had misrepresented any information in the Application, Answers to Medical Examiner, Foreign Travel Supplement or to Systematic Business Services, Inc., it would have requested documents to support other statements made by Bennett, including copies of tax returns, financial statements on the business prepared by a CPA, medical records, driver's licenses and other personal documents.

*Id.* at 3–4. According to Kneip, that Bennett failed to disclose [the visits to Munroe Regional Medical Center E.R., Munroe Regional Medical Center/Shands Hospital and Clinic, Palmetto General Hospital, and Sigma Medical Center], in and of itself, would have caused [defendant] to decline to issue the policy. *Id.* at 4. Additionally, Kneip stated that Bennett's history of malaria, diagnosis for syphilis, and positive test for tuberculosis would bear materially upon not only her health, but her socio/economic and financial status as well because such illnesses are "generally contracted in higher risk environments and the origin and status of each condition

would have been thoroughly investigated." *Id.* at 4. Kneip further stated that defendant would not issue a policy to a proposed insured with a medical history of these illnesses who intended to embark on any foreign travel. *Id.* at 6. Kneip attested that "Bennett's complaints of and treatment for headaches and polyarthritis would have caused [defendant] to investigate those matters further and to obtain medical records." *Id.* at 5. Kneip also stated that:

had [defendant] been advised that Bennett had been to and treated at [Monroe Regional Medical Center E.R., Monroe Regional Medical Center/Shands Hospital and Clinic, Palmetto General Hospital, and Sigma Medical Center], it would have requested copies of the records of those facilities. A review of these records would not only have disclosed the medical conditions, which would be material, but also multiple addresses for Bennett; that she was unemployed; and that she was receiving Medicaid, AFDC (welfare), child support, food stamps and public transportation, all of which would have been material.

*Id.* at 4–5.

## C. Plaintiff's Factual and Legal Arguments Opposing the Motion.

Plaintiff disputes that it was Bennett who obtained medical attention and resided at different addresses, as detailed in the records filed by defendant. *See* Doc. 129. Plaintiff states that "[a] duplicate Florida Driver's License was issued June 2, 1993 to May 7, 1998 to an imposter claiming to be JUANA BENNETT," and "Dr. Hasbun testified that medical cards have been either stolen or loaned and used by others than the qualified patient."

Plaintiff further argues that the irregularities of the application process have left defendant with unclean hands and that defendant cannot, therefore, rescind the policy. Plaintiff cites to the public policy advanced by Florida statutes which re-

quires licensed agents to provide disclosure to a prospective insured; plaintiff alleges that this duty to disclose includes a duty to translate. Plaintiff also contends that the truth of any alleged misrepresentations was known to defendant through its agent who secured the policy and that defendant cannot now rescind a policy which arose in this tainted atmosphere. Plaintiff finally argues that resolution of the materiality of any misrepresentations is generally reserved for the trier of fact and is not, therefore, properly decided on summary judgment.

## V. THE COURT'S DECISION

Defendant has amply demonstrated by record evidence that Bennett materially misrepresented her medical condition and history in her answers on the Medical Examination Form. Bennett told the medical examiner that she had only seen a doctor twice in the last five years for the birth of a child and a checkup with a minor (negative) lab test. The record reveals that she had in fact been seen and treated at least twenty times for a huge variety of ailments.

Plaintiff's theory of an imposter is not supported by any record evidence. While it may be true that insurance cards are sometimes stolen, there is no evidence that Bennett's card was stolen. Moreover, the Social Security numbers and birth dates noted throughout the medical records (see Def's App., Ex. 20–23, and Doc. 127) match those supplied by Bennett on her insurance application. The Medicaid iden-

tification number on Sigma Medical Center records (Def's App., Ex. 23) is the same number noted on records which undisputedly relate to Juana Bennett such as those from Palmetto General Hospital for hospitalization for the birth of her son (Def's App., Ex. 21).

Indeed, to coincide with plaintiff's "imposter" theory, the "imposter" would have to have gone to the length of bringing Bennett's children with her to checkups. (*See* pages 5, 21, and 23 of Dr. Hasbun depo., [Doc. 110]. *See also*, Def's Ex. 2 & 3 to Doc. 110 [Michael & Sirena Bennett's medical charts from Sigma Medical Center], as compared with Def's App., Ex. 23 [Juana Bennett's medical chart from Sigma Medical Center], establishing, for example, that on June 8, 1993, December 18, 1993, and September 29, 1995 both Juana Bennett and one of her children sought medical attention from Dr. Hasbun; and that the Medicaid identification number noted throughout Juana Bennett's chart is same number noted on her children's records for December 18, 1993 and September 15, 1995.)

█ Plaintiff has not, either in his written response or at the summary judgment hearing, given any indication that he could produce sufficient evidence[7] to create a triable issue in the face of the overwhelming evidence that it was in fact Bennett who had the extensive medical history which the record reveals.[8] Although not all of the records submitted by defendant have been formally authenticated, the

---

7. Plaintiff's imposter theory rests on his conclusion that the photograph on a driver's license duplicate issued June 2, 1993 is not Juana Bennett. (Def.App.Ex.6). Defendant's brief acknowledges that this photograph is of a different person than the person in the other photographs. (Doc. 105, n. 1). *However,* even if plaintiff is able to prove that this is not a photograph of Bennett, such proof does nothing to refute the evidence that the "real" Juana Bennett, accompanied by her children, sought medical care which she failed to disclose in her answers to the medical examiner.

8. Though the parties have not completely finalized discovery, this litigation has certainly gone on long enough for the parties to conduct ample discovery and, but for both parties' repeated requests for extensions, the discovery period would have ended November 1, 1998 (see Doc. 48). Given that defendant's arguments are the same as those raised in its initial answer (Doc. 5, filed on October 27, 1997), plaintiff has had plenty of time to meet these issues and is not prejudiced by the timing of defendant's motion. Moreover, the remaining discovery to be conducted by plaintiff does not address the material misrepresentations the Court finds dispositive.

medical records upon which the Court primarily relies in making this decision were authenticated by Dr. Hasbun at his deposition. (See Doc. 110). Additionally, while plaintiff has noted that at least some of the other medical records are not authenticated, he has not challenged defendant's ability to authenticate these records and has, in fact, referenced some of these records himself as support in his opposition memorandum. *See H. Sand & Co., Inc. v. Airtemp Corp.*, 934 F.2d 450, 454 (2nd Cir. 1991) (Rule 56(e) does not require Court to consider only authenticated documents; Court may also consider unauthenticated documents where they have not been challenged). Furthermore, even in the face of an objection to reliance upon non-authenticated records, there is authority to indicate that, at the summary judgment stage, the Court may rely upon non-authenticated records where it finds that those records could be reduced to admissible evidence at trial. *See Pritchard v. Southern Co. Serv.*, 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir.1996), *aff'd*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *Coker v. Tampa Port Authority*, 962 F.Supp. 1462, 1467 (M.D.Fla.1997). There is no reason to believe that defendant would be unable to authenticate these same medical records if required to do so for trial.[9] Moreover, even if the Court were to find that Fed.R.Civ.P. Rule 56(e) and other authorities (*see, e.g., U.S. v. Labato*, 1997 WL 834804, *1 (M.D.Fla. 1997), *aff'd*, 152 F.3d 934 (11th Cir.1998); 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2722 (1998)) deter it from considering non-authenticated records, the medical records authenticated by Dr. Hasbun, in and of themselves, provide the Court with overwhelming evidence that Bennett had a substantial medical history in direct conflict with answers she gave to the medical examiner.

■ Plaintiff's arguments related to defendant's "unclean hands" do not apply to misrepresentations made to the Medical Examiner. The Court need not decide the merits of these arguments as they relate to the rest of the application because plaintiff does not argue that Bennett's answers on the Medical Examiner form were similarly tainted. In addition, Dr. Jose Rodriguez, who conducted the medical examination, testified at his deposition that he speaks Spanish and he would have translated the questions to an applicant who could not understand English. *See* Doc. 112 at 5–6. While Dr. Rodriguez had no independent recollection of conducting Bennett's exam or translating the questions for her (*id.* at 6–7), the Court is satisfied and plaintiff does not dispute that the answers provided on the form are sufficiently detailed to conclude that Bennett held intelligible conversations with Dr. Rodriguez and that her actual answers are recorded on the form.

■ Plaintiff also offers no evidence to support his argument that any misrepresentations on this Medical Examiner form would not be material, nor has plaintiff, through discovery or by counter-affidavit, tried to combat the Kneip affidavit. *Cf. Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d at 567 (district court erred in granting summary judgment when testimony of underwriters was contradictory and plaintiff had pending discovery request to examine insurer's records to determine if insurer's general review procedure was consistent with review of plaintiff's policy).[10] An insurer

9. In fact, defendant indicated that it intended to depose a records custodian for Palmetto General Hospital on February 4, 1999 (Doc. 135, 137). In all likelihood, this deposition has already taken place.

10. Plaintiff has argued that defendant failed to produce for deposition an underwriter with knowledge comparable to that of Kneip upon whose affidavit defendant relies in its summary judgment motion. However, as noted by defendant at oral argument, when plaintiff did depose both an underwriting consultant and a claims representative employed by defendant, plaintiff did not question either of

may establish the materiality of misrepresentations through the affidavit of an underwriter. *Kieser,* 712 So.2d at 1263; *National Union Fire Ins. Co. Of Pittsburgh, Pa. v. Sahlen,* 999 F.2d 1532, 1536 (11th Cir.1993); *Jackson Nat. Life Ins. Co. v. Proper,* 760 F.Supp. 901 (M.D.Fla. 1991). Generally, however, such "Monday morning quarterbacking" is disfavored and the materiality of misrepresentations will be a factual issue to be decided by the trier of fact, which naturally precludes summary judgment. *Fernandez v. Bankers Nat. Life Ins. Co.,* 906 F.2d at 567; *see also, Beneby v. Midland Nat. Life Ins. Co.,* 402 So.2d 1193, 1194 (Fla. 3rd DCA 1981) (general rule is that "factual issues pertaining to misrepresentations on an application for insurance are properly within the province of the trier of fact"). Here, however, unlike in *Fernandez* or *Beneby,* plaintiff has offered no contradictory evidence to rebut the underwriter's statement that an "insured's past medical history and medical treatment are material ... and Bennett's failure to disclose these visits to hospitals, in and of itself, would have caused [defendant] to decline to issue the policy." Doc. 123 at 4. Furthermore, because these knowing misrepresentations concern Bennett's medical history, they so affect the insurer's assessment of risk that such misrepresentations are material as a matter of law. *Kieser,* 712 So.2d at 1264; *de Guerrero v. John Hancock Mut. Life Ins. Co.,* 522 So.2d 1032, 1033 (3rd DCA 1988) (where insurer's affidavit established clear and uncontradicted evidence that misrepresentations were material in that they undisputably affected the insurer's willingness to accept the risk or issue the policy on the same terms, the materiality of the misrepresentations shall be decided as a question of law).

In sum, plaintiff has offered no evidence that the medical records produced in this case are those of an imposter and not Bennett. Plaintiff has not rebutted the materiality of the misrepresentations related to medical history given by Bennett as answers to the medical examiner. Plaintiff's arguments related to the irregularities of the application process do not apply to the circumstances under which answers were given to the medical examiner. Thus, plaintiff has not established the existence of a genuine triable dispute of material fact which would preclude summary judgment.

Where the evidence is such that it would entitle defendant to a directed verdict at trial, the Court has a duty to render summary judgment. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. This is such a case. Defendant is, therefore, entitled to rescind this insurance policy.

## VI. CONCLUSIONS

Accordingly, upon due consideration, it is hereby

**ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. 105) is **GRANTED.**

2. The Clerk is directed to enter Judgment in favor of defendant and against plaintiff on the Counterclaim for rescission (Doc. 90).

3. Defendant is also entitled to summary judgment on its affirmative defense based on rescission. The Clerk is directed to enter Judgment in favor of defendant and against plaintiff on the Third Amended Complaint (Doc. 87).

them as to the materiality of any misrepresentations allegedly made by Bennett. (See Corkran deposition, Doc. 133 & Nyfors deposition, Doc. 132). Moreover, following service of the Kneip affidavit, plaintiff did not seek to depose him pursuant to Rule 56(f), FED. R.Civ.P.