PADOVANO, J.,
dissenting.
I respectfully dissent for three reasons: (1) the provision in the application that would allow the insurance company to deny coverage on the ground that the insured had failed to disclose a modification of the vehicle cannot be reconciled with other provisions in the policy expressly affording insurance coverage for undisclosed modifications; (2) the term “modify” in the application is ambiguous and could reasonably refer to something more than the addition of custom parts to the vehicle, as was the case here; and (3) assuming the judgment is to be reversed, and it should not be in my view, it should be reversed for a trial on all of the factual issues in the case and not merely for a resolution of the agency issue identified in the majority opinion.
The majority assumes that the term “modify” was used only in the application for insurance, but that term was also used in the text of the insurance policy itself. The significance of this error is that the meaning of the term “modify” as used in the policy forecloses the possibility that coverage could be denied solely for a failure to disclose any change in the vehicle, much less a change that merely consists of the installation of custom parts. By its terms, the policy covers all modifications of the vehicle, even those that are not disclosed.
The property damage section of the policy contains the following exclusion: “There is no coverage for ... (8) special equipment or modifications in excess of $1,000.00 value in the aggregate unless such equipment or modification is specifi *735 cally listed on the declarations page.” The phrase “special equipment or modification” is defined in the policy as “1. equipment not installed by the original manufacturer ... [or] 2. any modification, customization, or enhancement.” By the plain language of these provisions, coverage exists to some extent, even for special equipment that was not disclosed on the application. If the insured has modified the vehicle by installing aftermarket tires or an aftermarket suspension system and has not disclosed the modifications to the company, coverage still exists to the extent of $1,000.00.
In this case we are dealing with a dispute about liability coverage, but if we are to ascribe a fair meaning to the term “modify” as used in the application we must also consider the way in which the insurance company used that term in the text of the policy. As the supreme court explained in Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 869 So.2d 938, 941 (Fla.1979), the courts should interpret the meaning of terms used in an insurance policy by considering the policy as a whole. See also Gen. Star Indem. Co. v. W. Fla. Village Inn, Inc., 874 So.2d 26 (Fla. 2d DCA 2004) (observing that the policy and application should be construed together). It would make little sense, in my view, to conclude that the insurance company meant to provide coverage for property damage, albeit to a limited extent, for a special part or modification not disclosed in the application, and at the same time deny liability coverage on the ground that the insured did not disclose the existence of the special part or modification.
To the contrary, I believe that the language of the clause limiting coverage for special equipment or modifications negates a claim that the insured misrepresented a material fact by failing to disclose the modification. Because the policy expressly provides coverage to some extent for special parts and modifications not previously disclosed or listed on the declarations page, it is reasonable to conclude that the failure to disclose the existence of special tires or a special suspension system was not the kind of misrepresentation that could invalidate the entire policy. The majority has arrived at a contrary conclusion by interpreting the terms of the application in isolation as if they were unrelated to the terms used in the policy itself.
Even if it were not for this inconsistency between the application and the property damage provisions of the policy, I believe that the term “modified” as used in the application, is ambiguous. I agree with the trial judge that when the term “modified” is read in the context of the entire question, “Is the vehicle rebuilt, salvaged, modified, altered or specifically built/customized?” it could refer to a change that is much more fundamental than the addition of larger tires and a heavy-duty suspension system. The terms “built,” “rebuilt,” and “salvaged,” all suggest that the term “modified” refers to a much more significant transformation of the vehicle.
This conclusion is supported by the fact that the insurance policy expressly provides coverage for “custom parts or equipment.” In this regard, the policy states “If you pay a premium for Comprehensive Coverage or Collision Coverage we will pay for the theft of, or damage to, custom parts or equipment resulting from any loss for which Comprehensive Coverage or Collision Coverage is provided under the terms of this policy.” The fact that the policy affords coverage for damage to custom parts and equipment can only mean that it is permissible for an insured to install custom parts and equipment. That this coverage is afforded under the policy also suggests that the need to disclose a modification to the vehicle means some *736 thing much more than adding a custom part.
The majority dismisses the fact that the policy affords coverage for custom parts and equipment by noting that coverage for those parts would be limited if they are not disclosed. In my view, that is beside the point. The fact that the policy provides any coverage at all for damage to custom parts and equipment, the existence of which was not disclosed, suggests that some kinds of undisclosed modifications to the vehicle will not invalidate the coverage.
The main point of the majority opinion is that a reasonable person in the insured’s position would understand that the installation of oversized tires and a special suspension system qualifies as a modification. I think that this conclusion is undercut, at least to some extent, by the very debate we have had in this case. At this point in the progress of the case, four judges have carefully examined the application and insurance policy in an effort to determine the meaning of the term “modify” as used in the application. Two of them believe the term is ambiguous but the other two believe that it is not. It is difficult for me to understand how we can expect a layperson focused on the task of purchasing insurance to have a better or clearer understanding of the policy.
The majority concedes that the term “modified” might be ambiguous if the insured had merely added “mud flaps, fuzzy dice, or window tinting” to his vehicle. But it seems to me that this kind of reasoning puts the court in the position of making ad hoc decisions about the situations in which the term “modify” is ambiguous.
It is fair to assume, as the majority evidently has in this case, that the insurance company might be less concerned about changes in appearance than it would be about changes that affect safety or performance. However, we must decide the issue based on the language of the policy, not on the basis of our own assumptions. According to the policy, the phrase “custom parts or equipment” means “equipment, devi[c]es, accessories, enhancements and changes, other than those which are originally manufacturer installed which: a. are permanently installed or attached; and b. alter the appearance or performance of the car.” This definition plainly includes the tires and suspension system added to the truck in this case. Consequently, the truck is covered.
It does not matter that these custom parts altered the appearance of the truck, a fact that is plain for anyone to see. Nor does it matter that the installation of these parts will alter the performance of the truck, a fact that could be inferred by anyone with a rudimentary knowledge of physics. We must go by the policy, and the policy provides coverage not only for custom parts that alter the appearance of the vehicle, as in the examples given by the majority, but also for custom parts that alter the performance of the vehicle.
Because I believe that the meaning of the term “modified” is ambiguous for the reasons given here, I would affirm the summary judgment for the insured. If the judgment is to be reversed, however, the reversal should not be limited to an adjudication of the agency issue. A resolution of that issue will not settle the controversy in this case as it is merely one part of a larger issue regarding the materiality of the alleged misrepresentation.
The narrow scope of the remand effectively adjudicates other factual issues in the insurance company’s favor. I believe this was a mistake. The reversal of a summary judgment for one party does not adjudicate an issue on the merits of the case in favor of the other, it merely opens *737 the case for trial. This rule applies even if both parties moved for summary judgment in the trial court and even if they each contended that there were no disputed issues of material fact. See Shaffran v. Holness, 93 So.2d 94 (Fla.1957). A party who sought a summary judgment in the trial court will be estopped only from taking a position on appeal that is contrary to that particular issue, and is not estopped from claiming that the facts were in dispute in other material issues in the case. Spencer v. Halifax Hosp. Dist., 242 So.2d 143 (Fla. 1st DCA 1970); Harper ex rel. Daley v. Toler, 884 So.2d 1124 (Fla. 2d DCA 2004).
The effect of the decision by the majority is merely to determine that the policy is not ambiguous; yet the majority appears to skip forward to conclude as a matter of law that the insured did, in fact, make a material misrepresentation. That is the very point the insurance company must now prove in order to justify its denial of coverage. The insurance company has not yet won the case as one might think from reading the majority opinion; it has merely won the right to a trial.
An insured’s misrepresentation in an application need not be intentional but it must be material to the insurer’s acceptance of the risk. Life Ins. Co. of Va. v. Shifflet, 201 So.2d 715 (Fla.1967); Kieser v. Old Line Life Ins. Co. of Am., 712 So.2d 1261 (Fla. 1st DCA 1998). The insurer must prove “the misrepresentation, its materiality, and the insurer’s detrimental reliance.” Griffin v. Am. Gen. Life & Acc. Ins. Co., 752 So.2d 621, 623 (Fla. 2d DCA 1999). These are factual questions for the jury. Celtic Life Ins. Co. v. Fox, 544 So.2d 245 (Fla. 2d DCA 1989); Blue Cross/Blue Shield of Fla., Inc. v. Mignolet, 475 So.2d 965 (Fla. 3d DCA 1985); Cabella v. Travelers Indem. Co., 248 So.2d 539 (Fla. 3d DCA 1971).
Whether the incorrect statement on the application form was material is an issue that might not stand or fall entirely on the agency issue that is the subject of the remand to the trial court. We do not even know whether there is a dispute of material fact on that issue. The trial judge did not reach the question, having ruled for the insured on a more fundamental point.
The insurance company’s argument on the agency issue is that the broker had no apparent authority to act on the company’s behalf because the application shows that she had only a limited authority to bind coverage. I do not read the application to convey this point at all. It seems to me that the application did give the broker authority to bind coverage if she believed that the correct answer to the question regarding modifications was “no.”
In any event, the question of agency is one that is yet to be determined. The rule in Florida is that a broker may be found to be a statutory agent of a particular insurance company if the company provides sufficient indicia of agency, such as “blank forms, applications, stationery, or other supplies used in soliciting or negotiating insurance contracts.” § 626.342(1), Fla. Stat.; Almerico v. RLI Ins. Co., 716 So.2d 774 (Fla.1998); Amstar Ins. Co. v. Cadet, 862 So.2d 736 (Fla. 5th DCA 2003); Straw v. Assoc. Doctors Health & Life, 728 So.2d 354 (Fla. 5th DCA 1999). In such case, the knowledge of the broker would be imputed to the insurance company. Guarente-Desantolo v. John Alden Life Ins. Co., 744 So.2d 1123 (Fla. 4th DCA 1999). In the present case, the broker was asking the insured questions from the company’s application form. If the broker knew the condition of the truck, as the insured says she did, her knowledge would be imputed to the insurance company thus defeating its claim that it would not have accepted the risk had it known.
*738 The point evidently overlooked by the majority is that the insured’s incorrect answer might be immaterial for other reasons. For example, the evidence might show that the insurance company routinely insured trucks like this and is complaining in this case only to avoid the payment of a rather large claim. Even if that is not the case, the jury might simply reject the claim by the company’s underwriters that it would not have insured a truck with oversized tires and a lift kit. We simply do not know the answers to these questions.
For these reasons, I believe that the trial judge was correct in granting summary judgment for the insured and that the judgment should be affirmed. If the majority believes that the trial court’s decision must be reversed, it should be reversed for a trial in which the insurance company would have to prove that the insured made a material misrepresentation.