SALTER, J.
United Auto Insurance Company (UAIC) appeals a final judgment and orders denying post-trial motions in a case brought under the bad faith statute.[1] We affirm.
UAIC raises four points on appeal. First, it argues that the trial court abused its discretion in excluding evidence regarding the insurer’s prompt action in settling two of four separate policy-related claims arising from a tragic two-car collision. Second, UAIC contends that the trial court abused its discretion by affording the ap-pellee, plaintiff below, an opportunity to re-open her case and offer “surprise testimony” to prove her status as the assignee of UAIC’s insured. Third, UAIC argues that a jury instruction regarding “no realistic possibility of settlement within the policy limits” impermissibly shifted the burden of proof from the appellee to UAIC. Fourth, UAIC maintains that the appellee failed to prove a prima facie case of insurer bad faith under the statute and applicable precedent.
We address each of these points in order, although only the first issue merits extended analysis. Before doing so, however, we note one feature of the trial below that distinguishes the record here from many other insurance bad faith cases: no expert witness testified on behalf of UAIC regarding claims-handling policies general *784 ly or in this specific case. Two expert witnesses testified for the appellee regarding these issues.
I. Background
In December 2001, UAIC’s insured under a personal injury protection (PIP) policy, Jose Hernandez, drove his flatbed truck into an automobile driven by Steven D. Levine. Levine and his passenger, Lourdes Maldonado, were killed. Hernandez and his passenger, Ruben Soto, were seriously injured. Hernandez’s PIP policy covered $10,000 per person for bodily injury, with an aggregate limit of $20,000, as well as $10,000 of property damage.
Levine’s spouse, Tracy Howard, was appointed personal representative of his estate. She retained an attorney to investigate the estate’s claims arising from the accident and death. These included potential claims against Hernandez and his insurer, claims for uninsured/underinsured coverage under a non-UAIC policy, a claim against an establishment that served alcoholic beverages to Hernandez in the hours before the accident, and other claims.
UAIC assigned a non-attorney adjuster to the case who determined that there were four prospective claims against Hernandez under the policy: bodily injury claims on behalf of the Levine estate, the Maldonado estate, and Soto, and a property damage claim on behalf of the owner of the automobile driven by Levine and destroyed in the accident. On February 4, 2002, Levine’s estate notified Hernandez of its claim against him. Two days later, Hernandez’s attorney notified UAIC of the claim (although UAIC had begun its investigation of the claim immediately after the accident). The same day, UAIC tendered to counsel for the Levine estate a check for the $10,000 bodily injury limit, transmitting it with a “Release of All Claims,” a “Hold Harmless and Indemnification Agreement,” and a transmittal letter. The letter indicated that the release was provided “for execution,” but the letter also requested five additional documents: (1) a subrogation waiver from any uninsured motorist carrier, if applicable, (2) disclosure of all liens and medical/health insurance subrogation claims against the proffered settlement, (3) written confirmation that all such liens and subrogation claims would be satisfied out of the proceeds of this settlement, (4) the “Hold Harmless Agreement,” and (5) letters of administration appointing the personal representative of the estate. The transmittal letter was unclear whether the execution and return of the specified documents was a condition to the “prompt and proper disbursement” of the tendered amount.
The release and hold harmless agreements were forms modified to identify the claim and policy numbers as well as the identity of the payee and UAIC’s insured. The terms of these agreements were sweeping in their breadth and scope.[2]
*785 II. Analysis
A. Exclusion of Evidence Regarding the Maldonado and Soto Settlements
Section 624.155(l)(b)(l), Florida Statutes, affords “any person,” including an insured, a civil remedy against an insurer for “[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests....” UAIC argues that “claims” and “under all the circumstances” refers to all four claims against its insured, Hernandez, and all the circumstances pertaining to all four of those claims. More specifically, UAIC contends that it was entitled to show the jury that UAIC settled the Soto and Maldonado claims quickly and by tendering more than the aggregate policy limits.
The issue was presented to the trial court via the Levine estate’s motion in limine. The Levine estate sought to exclude evidence regarding the settlements by UAIC and (a) the Maldonado estate as against Hernandez, and (b) Soto as against Hernandez, although argument regarding the motion was principally directed to UAIC’s settlement of the claim of the Maldonado estate against Hernandez. UAIC argued that the prompt resolution of the Maldonado estate claim — which occurred because UAIC did not require the Maldonado estate to sign the release as a precondition for negotiating the check in payment of that claim — tended to prove good faith vis-a-vis UAIC’s insured, Hernandez.
We review the trial court’s exclusion of the evidence under the abuse of discretion standard, a standard testing whether the trial court’s conclusion is “arbitrary, fanciful, or unreasonable.” H & H Elec., Inc. v. Lopez, 967 So.2d 345, 347-48 (Fla. 3d DCA 2007) (quoting Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980)). In the case at hand, the trial court recognized that the fact that one independent claimant negotiated separate settlement terms (no release required) with UAIC did not tend to prove whether UAIC acted properly regarding the claim of another independent claimant. To hold otherwise would be to risk distracting the jury — which was to focus on UAIC’s efforts or lack of effort in settling the Levine estate’s claim against Hernandez — with a “trial within a trial” on the collateral question of why the Maldonado estate and UAIC settled with Hernandez, while the Levine estate did not (one such reason, according to the Levine estate’s witnesses, was that the Levine estate wanted to preserve a claim against the bar that served alcoholic beverages to Hernandez). The jury’s focus was to be on UAIC’s obligation to protect its insured from the anticipated, substantial, and actual claim of the Levine estate. We conclude that the trial court fairly balanced the purported relevance and probative value of the Soto and Maldonado estate/UAIC settlements against the prejudicial impact, with the result that no abuse of discretion has been shown. H & H Elec., Inc., at 347-48 (citing Trees v. K-Mart Corp., 467 So.2d 401 (Fla. 4th DCA 1985)).
The trial court’s ruling is practical as well. Suppose an insured driver hits six pedestrians. The insurer immediately settles with five, but refuses to act reasonably and in good faith regarding the sixth injured claimant, resulting in an excess (above policy limits) judgment in favor of the sixth claimant against the insured. In the statutory insurance bad faith trial involving the sixth claim, must the trial court allow the insurer to offer evidence of each of the five cases that were settled, and the inevitable cross-examination to explore the different terms of, and reasons, for, each *786 of those settlements by the five other claimants?
Neither the statute nor any reported case requires or even permits such detours. In what is perhaps the most recent, comprehensive analysis of statutory bad faith by the Supreme Court of Florida, Berges v. Infinity Insurance Co., 896 So.2d 665, 677 (Fla.2005), that Court observed that “the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured.” However, in that case (as here), the question was whether the insurer investigated and gave fair consideration to a particular settlement proposal that was not unreasonable under the facts, “where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.” Id. at 681 (citing Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla.1980)). In short, the focus is on the insurer’s reasonable assessment of “a” claim against its insured.[3] In this case, “the” claim upon which the statutory bad faith claim was based was the Levine estate’s claim against Hernandez. For these reasons, we find no error in the trial court’s exclusion of evidence regarding UAIC’s resolution of the separate Maldonado estate and Soto claims against Hernandez.
B. The Assignment
The Levine estate’s amended complaint against UAIC alleged a statutory bad faith claim based on Hernandez’s assignment of the claim to the estate. A copy of the assignment was attached to the amended complaint and served on UAIC over two years before the trial of the bad faith case. UAIC’s answer denied the allegation that Hernandez had assigned his statutory bad faith claim to the Levine estate, but did not assert any affirmative defense directed to the estate’s standing or right to assert the claim. The assignment itself is a bilateral agreement between Hernandez and the estate (and purportedly signed by each) in which the estate undertook (among other things) to prosecute and bear the expenses of the bad faith action against UAIC on behalf of Hernandez.
At trial, after the Levine estate closed its case, UAIC moved for a directed verdict on grounds which included an argument that the estate had not proven the validity of the assignment. The trial court permitted the estate to re-open its case to present additional testimony of the personal representative/assignee (Levine’s widow) and the insured/assignor’s attorney (who had not been listed on the pretrial witness list) regarding the assignment. This testimony was taken while the jury was not present. UAIC presented no evidence challenging the genuineness or authenticity of the signed assignment document.
The assignment is not a required element of the Levine estate’s statutory bad faith claim against UAIC. A judgment creditor of the insured “may maintain suit directly against tortfeasor’s liability insurer for recovery of the judgment in excess of the policy limits, based upon the alleged fraud or bad faith of the insurer in the conduct or handling of the suit.” Thompson v. Commercial Union Ins. Co. of New York, 250 So.2d 259, 264 (Fla.1971). Similarly, in section 624.155(1), Florida Statutes (2007), the term “any person” has *787 been held to confer a direct third-party cause of action by claimants such as the estate. Auto-Owners Ins. Co. v. Conquest, 658 So.2d 928 (Fla.1995). In the present case, the validity of the assignment is thus an issue which only affects the entitlement of the Levine estate to attorney’s fees under section 627.428, Florida Statutes (2010).
As a result, we find no prejudice to UAIC; jurisdiction to determine and award any attorney’s fees and costs was separately reserved in the amended final judgment under review. The record before us does not disclose whether the trial court subsequently awarded attorney’s fees and costs, but certainly the purportedly “surprise” authentication testimony by the personal representative/assignee and the assignor’s attorney at trial was (or will be) no longer a “surprise” at the attorney’s fee hearing months later.[4] We find no abuse of discretion in the trial court’s decisions to allow the Levine estate to re-open its case briefly to offer testimony responsive to UAIC’s supposed concern about the assignment and to admit that document and the related testimony (subject to UAIC’s rights to cross-examine the witnesses and offer any evidence tending to prove that the assignment is invalid or something other than it appears to be).
C. Jury Instruction
UAIC maintains that the jury instructions ultimately given impermissibly shifted the burden of proof to UAIC. We disagree. The jury instruction in question was expressly limited to “the defense of the unwillingness of the plaintiff to settle.” Regarding the bad faith claims as a whole, the jury was instructed that a defense verdict should be entered if the Levine estate’s evidence did not support the estate’s claims. Any such objections were raised belatedly, and thus waived, and considering the verdict form and instructions collectively, as required, no error has been shown. Parker v. Graham & James, 834 So.2d 881, 882 (Fla. 3d DCA 2002) (citing Gallagher v. Fed. Ins. Co., 346 So.2d 95 (Fla. 3d DCA 1977)).
D. Denial of UAIC’s Motion for Directed Verdict
Finally, regarding UAIC’s arguments that the Levine estate failed to make a prima facie case and that “the undisputed facts demonstrate that the insurer could not have acted in bad faith,” this record amply supports the submission of the estate’s case to the jury. UAIC’s initial enthusiasm for tendering its policy limits to the Levine estate pales when set against the one-size-fits-all release required by UAIC, UAIC’s failure to follow up in more than a superficial way (in a case plainly involving a catastrophic claim), and UAIC’s failure to present expert testimony responsive to the estate’s experts.
III. Conclusion
The essence of UAIC’s claim in this case, though not directly articulated, is *788 that it was set up for a bad faith claim as a strategy, by the Levine estate’s failure to tell UAIC why UAIC’s tender, release, and other requirements were unacceptable. The “strategy” question was debated in the majority and dissenting opinions in Berges,[5] and it is far from over.[6] Until there is a substantial change in the statutory scheme or the rationale explained in the majority opinion in Berges, however, juries will continue to render verdicts regarding an insurer’s alleged bad faith when the pertinent facts are in dispute.
For the reasons detailed above, we find no abuse of discretion or reversible error by the trial court in this case. The amended final judgment and post-trial orders below are affirmed.
EMAS, J., concurs.

. § 624.155, Fla. Stat. (2002).

. For example, the Estate was to indemnify and hold harmless UAIC, "its heirs, assessors [sic] and assigns” from and against an assortment of other claims or liens, including "any and all other Insurer's claims or subrogated liens.” The release included a recital that the personal representative of the estate was "of lawful age” and that the release was to bind “any heirs, executors, administrators, successors and assigned [sic]” as against UAIC, "their agents, servants, successors, heirs, executors, administrators and all other persons, firms, corporations, association [sic] or partnerships of and from any and all claims, actions, causes of action, demands, rights damages [sic], costs, loss of service, expenses and compensation whatsoever” including any "known and unknown, foreseen and/or unforeseen” injuries and damage resulting or to result from "the accident, casually [sic] or event” identified by date and location.

. Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla.1980), makes this explicit — "For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the in-sured_” Id. at 785 (emphasis supplied).

. Also, threshold authentication of a bilateral contract such as the assignment can be accomplished by either party to the document. The personal representative’s testimony, as one of two signators, was “evidence sufficient to support a finding that the matter in question is what its proponent claims.” § 90.901, Fla. Stat. (2009). "Before a writing with claimed juridical effect may be received, some showing of the authorship, and the authority to execute the instrument will be required. But courts have increasingly adopted a very practical approach, particularly where there is no indication that the records at issue are not what they purport to be.” Ramirez, Florida Evidence Manual, Second Ed., § 90.901.1 [b] at 9-9 (citing Mims v. Old Line Life Ins. Co. of Am., 46 F.Supp.2d 1251, 1260 (M.D.Fla.1999)) (emphasis provided).

. "I cannot join in the majority's approval of what I conclude is a created — rather than a real — bad faith claim.” Berges, 896 So.2d at 685 (Wells, J., dissenting).

. The two sides of the debate have been argued in two recent articles. See Gwynne A. Young and Johanna W. Clark, The Good Faith, Bad Faith, and Ugly Set-up of Insurance Claims Settlement, 85 Fla. Bar J. 8 (Feb. 2011), and Rutledge R. Liles, Florida Insurance Bad Faith Law: Protecting Businesses and You, 85 Fla. Bar J. 8 (Mar. 2011).